**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **USI INSURANCE SERVICES LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action File No.** |
| **v.** ) | |
| ) | |
| **SOUTHEAST SERIES OF LOCKTON** ) | |
| **COMPANIES, LLC,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## <u>COMPLAINT</u>

Plaintiff USI Insurance Services LLC ("USI") sues Southeast Series of Lockton Companies, LLC ("Lockton") and respectfully states as follows:

## <u>NATURE OF THE ACTION</u>

1.      USI brings this action against Lockton for tortiously interfering with USI's contractual and business relationships with its former employees Jameson Taylor Anderson, Robert Dean Anderson, and Roger Maldonado (the "Former Employees"), for unlawfully diverting the business of USI's Aviation Practice Group clients and other clients serviced by the Former Employees by inducing and

encouraging the Former Employees to breach their legal obligations to USI, and for raiding its Aviation Practice Group.

2.    The Former Employees were, until recently, employed by USI in its Aviation Practice Group, which provides insurance brokerage services to USI's clients in the aviation industry. Aviation insurance is a niche area of insurance that requires experience and knowledge regarding the specialized risks associated with aviation.

3.    Dean Anderson was the National Practice Head - Aviation for USI.  USI and its predecessors built a team around Dean Anderson to service USI's clients in this area. Roger Maldonado was a Senior Vice President in USI's Aviation Practice Group and held key roles in maintaining relationships with clients, prospects, and insurance companies. Taylor Anderson, Dean Anderson's son, was a Commercial Lines ("CL") Producer who also assisted USI's clients in meeting their Aviation service needs. The Former Employees all worked out of USI's Atlanta office, which, prior to Lockton's raid, had approximately ten employees in the Aviation Practice Group.

4.    Lockton willfully engaged in wrongful and malicious conduct designed to induce the Former Employees to breach their respective legal obligations to USI, including enforceable contractual notice provisions, breach of duty provisions, non-

compete and non-solicit covenants, and common law duties of loyalty and fiduciary duties. Lockton's wrongful and malicious raiding of USI's Aviation Practice Group did not stop with the Former Employees. Lockton willfully encouraged and assisted two additional employees of USI's Aviation Group to join Lockton just a few days after the Former Employees and reached out to all but one of USI's employees in the Group about leaving USI and joining Lockton.

5.    Knowing that the Former Employees would have to breach their employment agreements with USI to jump ship to Lockton, Lockton agreed not only to reimburse any attorneys' fees that the Former Employees incurred in defending any lawsuit that USI filed against them relating to their employment, but also, upon information and belief, agreed to indemnify the Former Employees for any injury or damage they sustained as result of legal action between the Former Employees and USI.

6.    USI files this action to recover the extensive damages that USI sustained as a result of Lockton's tortious conduct, along with punitive damages and attorneys' fees.

## **PARTIES**

7.    Plaintiff USI Insurance Services LLC is a Delaware limited liability company registered to do business in Georgia with its principal place of business

located at 100 Summit Lake Drive, Suite 400, Valhalla, New York 10595. USI's

sole member, USI, Inc., is a Delaware corporation. Therefore, USI is a citizen of

Delaware and New York for jurisdictional purposes.

8.     Defendant Southeast Series of Lockton Companies, LLC is a Missouri

limited liability company. Upon information and belief, Lockton's sole member is

Lockton Management, LLC. Upon information and belief, Lockton Management,

LLC's sole member is Lockton Insurance Agency, Inc. Lockton Insurance Agency,

Inc. is a Missouri corporation and has its principal place of business in Missouri.

Therefore, Lockton is a citizen of the state of Missouri for jurisdictional purposes.

Upon information and belief, no member of any of the foregoing Lockton entities is

a citizen of the State of New York or Delaware.

9.     Lockton is registered to conduct business in Georgia and has offices in

the State of Georgia.  Lockton's registered in agent in Georgia is Corporate Creations

Network, 2985 Gordy Parkway, First Floor, Marietta, Georgia 30066.

## **JURISDICTION AND VENUE**

10.     Jurisdiction and venue are proper in this Court under the facts and

circumstances set forth herein.

11.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum of $75,000.00, exclusive of interests and costs, and there is complete diversity of citizenship.

12.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because it is the district in which the conduct complained of arose.

## FACTS AND ALLEGATIONS

### USI Insurance Services

13.     USI is a full-service risk management and insurance brokerage firm. USI is one of the largest insurance brokerages in the United States. The insurance brokerage business is highly competitive. USI maintains an office in Atlanta, Georgia located at 3475 Piedmont Rd. NE #800, Atlanta, Georgia 30305.

14.     A key factor in developing and maintaining clients in the insurance brokerage industry is the strong relationship developed between the employee and the client. Insurance brokerage companies, like USI, invest significantly in establishing and maintaining strong relationships with their clients.

15.     USI regularly conducts repeat business with its clients. For example, when a policy is set to expire, USI works with its client to evaluate renewal options. USI also works with its clients to identify cross-selling opportunities to place other types of insurance.

16.    The insurance brokerage field that USI occupies is an extremely competitive industry. An important part of USI's business is the relationships and goodwill that it forms with its clients. These relations and goodwill are developed by hiring and training skilled personnel (including Executives and Producers), and through those Executives and Producers identifying and satisfying client needs and otherwise developing a solid reputation in the business community.

17.    USI relies on its Executives and Producers to maintain and enhance the goodwill of USI with respect to USI's clients and relationships with prospective clients.

18.    In the course of performing their duties for USI, Executives and Producers have access to and gain knowledge of confidential information about USI and its client accounts. USI provided such confidential information about USI and its clients to the Former Employees in this case.

19.    USI provides its Executives and Producers with significant training and resources as well as access to USI's clients. USI provided such training and resources to the Former Employees in this case.

20.    The Former Employees, as Executives and Producers, were responsible for managing all aspects of client relationships at USI, including attracting and

developing new clients, expanding current client relationships, and planning, marketing and developing future client opportunities.

21.    In recognition of the importance of the relationship between employee and client, it is standard in the insurance brokerage industry to have certain key employees execute employment agreements that contain notice provisions, requiring advance notice before an employee may terminate his or her employment, and non-solicitation and non-competition covenants. The notice provision allows the company the necessary time to transition the servicing of client accounts to another employee when the original employee announces his or her departure, to hire a replacement employee if needed, and allows the company to ask the departing employee questions regarding the account to ensure a smooth transition to the new service team member.

22.    Likewise, the non-solicitation and non-compete covenants provide the company with the necessary time to transition the business to the new service team and solidify the client relationship without unfair competition from the former employee and his or her new employer, and thus allows USI to protect its substantial investments in its clients and the training it has provided to its employees.

23.    Accordingly, in reliance on these restrictions, the company can invest the resources that allow the new service team member to maintain the company's

client relationship without unfair competition from the departed employee, who had the benefit of the company's previous investment.

24.    Consistent with this industry practice, USI generally requires all its employees who develop and service insurance business to agree to non-solicitation and non-competition covenants that apply during the term of employment and for two years after the termination of employment as a condition of their employment with USI.

25.    For employees who are often the primary point of contact with USI clients, USI generally requires those employees to sign employment agreements that also contain notice provisions, requiring advance notice if the employee terminates the employment relationship, as a condition of their employment with USI.

### The Former Employees

26.    Pursuant to a Stock Purchase Agreement ("Purchase Agreement") entered into on or about June 2017, USI agreed to purchase all the issued and outstanding equity interests of Wells Fargo Insurance Services USA, Inc. ("WFIS"), the corporation where the Former Employees were employed in June 2017.  At the time, WFIS was one of the largest insurance brokerages in the United States. The purchase transaction closed on or about November 30, 2017. Upon closing, WFIS was renamed USI Insurance Services National, Inc. ("USIN"), which was

subsequently merged into USI Insurance Services LLC. USI is the successor-in-interest to WFIS/USIN relating to this matter and the agreements with the Former Employees.

27.     Former Employee Dean Anderson was employed by USI and its predecessors-in-interest for approximately 28 years. Dean Anderson held the position of Senior Vice President, National Practice Leader - Aviation for USI.  Dean Anderson is highly knowledgeable and experienced in the field of aviation insurance and led USI's aviation insurance brokerage practice. As the National Practice Head, Dean Anderson worked with aviation clients and prospective aviation clients throughout the United States. Dean Anderson also had knowledge of USI's strategy in key markets throughout the country.

28.     In conjunction with the closing of the Purchase Agreement, USI offered Former Employee Dean Anderson an at-will position as National Practice Leader Property & Casualty (P&C) working out of USI's office in Atlanta, Georgia. Dean Anderson accepted the offer and agreed to certain terms and conditions set forth in an employment agreement. A true and correct copy of such employment agreement, referred to herein as the "DA Employment Agreement," is attached as Exhibit A.

29.     Former Employee Roger Maldonado was employed by USI and its predecessors-in-interest for approximately 8 years. Roger Maldonado was an

Aviation Senior Vice President with responsibilities that included developing new and existing client relationships on a national level for USI's Aviation Practice Group. In that capacity, Roger Maldonado arranged deals with underwriters, was regularly in contact with USI's clients, and was integral to the structure of USI's aviation insurance program.

30.     In conjunction with the closing of the Purchase Agreement, USI offered Roger Maldonado an at-will position as Senior Vice President working out of USI's office in Atlanta, Georgia. Roger Maldonado accepted USI's offer and agreed to certain terms and conditions set forth in an employment agreement. A true and correct copy of such employment agreement, referred to herein as the "RM Employment Agreement," is attached as Exhibit B.

31.     Both Dean Anderson and Roger Maldonado were responsible for growth of the Aviation Practice Group, a Property and Casualty specialty product line. Both had knowledge of USI's overall national growth strategy, actively participated in the marketing and sales process to provide advice and expertise to clients, and helped identify the products and/or services that would help meeting the clients' needs. They also utilized the company's resources to maintain relationships with key clients, prospects, and insurance companies throughout the United States to develop and maintain the capability to meet the needs of USI's clients.

32.    Former Employee Taylor Anderson is the son of Dean Anderson. Taylor Anderson was employed by USI and its predecessors-in-interest for approximately 9 years. USI and its predecessors gave Taylor Anderson the training and tools necessary to learn the insurance business and to service USI's clients. As an employee of USI, Taylor Anderson served as a Commercial Lines ("CL") Producer handling commercial insurance, including aviation insurance. In that capacity, Taylor Anderson served USI's aviation client accounts throughout the United States. Taylor Anderson was knowledgeable about all account activity for USI's Atlanta-based office as well as many accounts based elsewhere. Taylor Anderson was frequently brought into USI client relationships across the country where a Property & Casualty client had a need for aviation-related insurance.

33.    In conjunction with the closing of the Purchase Agreement, USI offered Taylor Anderson an at-will position as CL Producer working out of USI's office in Atlanta, Georgia. Taylor Anderson accepted USI's offer and agreed to certain terms and conditions set forth in an employment agreement. A true and correct copy of such employment agreement, referred to herein as the "TA Employment Agreement," is attached as Exhibit C. The TA Employment Agreement, the DA Employment Agreement, and the RM Employment Agreement are collectively referred to as the "Agreements."

## The Agreements

34.     The Former Employees voluntarily entered into the Agreements with USI and each received substantial compensation as a result of their employment with USI. By entering into the Agreements, they acknowledged and agreed that by commencing employment with USI, they received a direct financial benefit, and other good and valuable consideration.

35.     Under Section 2.3 of the DA Employment Agreement and Section 2.4 of the TA Employment Agreement, Dean Anderson and Taylor Anderson owed a duty of loyalty to USI.  Section 2.3 of the DA Employment Agreement and Section 2.4 of the TA Employment Agreement shall be referred to collectively herein as the "Duty of Loyalty Provisions."

36.     Under Section 8.2 of the DA Employment Agreement, Dean Anderson had the right to terminate his employment with USI by giving at least sixty days written notice to USI. Similarly, under Section 8.2 of the TA Employment Agreement, Taylor Anderson had the right to terminate his employment with USI by giving at least sixty days written notice to USI. Section 8.2 of the DA Employment Agreement and Section 8.2 of the TA Employment Agreement shall be referred to collectively herein as the "Notice Provisions."

37.    In exchange for employment by USI and other good and valuable consideration, Dean Anderson agreed not to compete against USI during the term of his employment and for six months thereafter within a specified "Restricted Geographic Area" in Section 7.5 of the DA Employment Agreement. Section 7.5 of the DA Employment Agreement shall be referred to herein as the "Non-Compete Covenant."

38.    Further, in exchange for employment by USI and other good and valuable consideration, the Former Employees also agreed not to compete against USI during their terms of employment and for a two-year period thereafter. DA Employment Agreement § 7.6, RM Employment Agreement § 4.6, TA Employment Agreement § 7.6 (referred to herein collectively as the "Client Non-Compete Covenants").

39.    Finally, in exchange for employment by USI and other good and valuable consideration, the Former Employees also agreed not to solicit clients and active prospective clients of USI during their terms of employment and for a two-year period thereafter. In Section 7.7 of the DA Employment Agreement and Section 7.5 of the TA Employment Agreement, Dean Anderson and Taylor Anderson, respectively, agreed to refrain from soliciting any Client Account or Active Prospective Client. Similarly, in Section 4.5 of the RM Employment Agreement,

Roger Maldonado agreed to refrain from soliciting any Client Account or Active Prospective Client. Such non-solicitation covenants are referred to herein collectively as the "Non-Solicitation Covenants."

40.    In the Agreements, the Former Employees expressly agreed that the time and scope of the covenants contained in the Agreements were reasonable and necessary to protect USI's confidential information and goodwill with respect to its Client Accounts. *See* DA Employment Agreement § 7.9, TA Employment Agreement § 7.8, RM Employment Agreement § 4.8.

### USI's National Aviation Practice

41.    Aviation insurance is a specialized niche in the insurance world. It requires knowledge of the unique risks inherent to aviation.

42.    USI's Aviation Practice Group assists clients with obtaining insurance for a wide range of aviation expenses, such as airport liability, aircraft hull and liability, flight school rights, unmanned aircraft systems, and numerous other risks uniquely encountered in aviation. USI's Aviation Practice Group provides a variety of services, including loss of control, claims management, contract review, advanced risk financing, industry updates, and planning for successful coverage renewals.

43.    USI and its predecessors have devoted substantial resources to supporting the Aviation Practice Group to allow its members to service USI's clients

and maintain and strengthen client relationships. Over the years, USI and its predecessors built a team of ten employees to service USI's clients and became a leader in the aviation insurance brokerage business.

44.     By contrast, Lockton did not have a substantial aviation practice prior to raiding USI's aviation group and hiring the Former Employees in violation of their legal obligations to USI.  *See* Exhibit D (true and accurate copies of Lockton press releases regarding the hiring of Plaintiffs, admitting that Lockton was still trying to "develop the kind of aviation risk specialization [Lockton is] known for in other arenas").[1]

45.     In their role as long-time employees, the Former Employees had access to and received a substantial volume of USI's confidential information and trade secrets. The Former Employees received access to a substantial volume of other information regarding USI's business operations and business strategy relating to the Aviation Practice Group.

---

[1]     https://www.lockton.com/newsroom/post/lockton-expands-aviation-practice-with-three-global-experts and https://www.lockton.com/newsroom/post/lockton-expands-aviation-practice-in-the-southeast-with-taylor-anderson-hir (last visited June 11, 2020).

46.    All of the foregoing confidential information is valuable to the business of USI and could be used by competitors for their benefit, and to the detriment of USI.

47.    The Former Employees had substantial relationships with prospective and existing clients of USI's Aviation Practice Group, customarily and regularly solicited for USI clients and prospective clients, and customarily and regularly engaged in making sales or obtaining orders or contracts for products or services to be performed by others.

48.    During their employment at USI, each of the Former Employees had been employees who, by reason of USI's investment of time, training, money, trust, exposure to the public, or exposure to clients and other business relationships during the course of their employment with USI, gained a high level of notoriety, fame, reputation, or public persona as USI's representatives and spokespersons and gained a high level of influence or credibility with USI's clients and other business relationships. Each of the Former Employees are also in possession of selective or specialized skills, learning, or abilities and customer contacts and customer information and obtained such skills, learning, abilities, contacts, and information by reason of having worked for USI.

## **Lockton Raids USI's Aviation Practice Group**

49.    As early as the middle of 2019, Lockton began planning its raid of USI's Aviation Practice Group. After becoming aware of the terms of the TA Employment Agreement, including the Duty of Loyalty and Notice Provisions and the Client Non-Compete and Non-Solicitation Covenants, Lockton induced Taylor Anderson to terminate his employment with USI and join Lockton. To that end, Lockton agreed to reimburse Taylor Anderson for any attorneys' fees that he incurred as a result of any litigation with USI concerning his employment agreement, and upon information and belief, agreed to indemnify Taylor Anderson against any claims that were made against him by USI in connection with his employment agreement.

50.    At least a month prior to Roger Maldonado's resignation from USI, Mr. Maldonado also communicated with Lockton about his possible employment with Lockton. At or around the same time these negotiations took place, Lockton was aware of the terms of the RM Employment Agreement. Having knowledge of all the terms in the RM Employment Agreement, Lockton offered a position to Mr. Maldonado and agreed to reimburse him for any attorneys' fees he incurred in connection with his departure from USI. Upon information and belief, Lockton also

agreed to indemnify him for any claims made by USI against him relating to his employment.

51.     On or about that same time Lockton was in discussions with Mr. Maldonado about joining Lockton, Lockton also reached out to Dean Anderson about working at Lockton. Shortly thereafter, having full knowledge of the terms of the DA Employment Agreement, Lockton offered Dean Anderson a position and similarly agreed to reimburse Dean Anderson for attorneys' fees he incurred in any litigation with USI regarding his employment agreement. Upon information and belief, Lockton also agreed to indemnify Dean Anderson for any claims that USI asserted against him.

52.     After having the above-described discussions with Lockton from the middle of 2019 through November 2019,  the Former Employees accepted Lockton's offer of employment approximately an entire month before attempting to resign or resigning from USI. The Former Employees did not inform USI of their discussions with Lockton or their acceptance of employment with Lockton for approximately a month while they continued to work at USI.

53.     In 2019, Janet Shuman was Lockton's in-house recruiter. During the time period from October 2019 through the end of 2019, almost all of the operations support team member from USI's Aviation Practice Group was contacted by Ms.

Shuman about leaving USI and joining Lockton. Ms. Shuman informed the USI employees, in substance, that there would be substantial departures on the team and that Lockton was expanding its aviation business in an attempt to persuade USI's employees to leave USI and join Lockton.

54.    Dean Anderson assisted these recruiting efforts on behalf of Lockton, by encouraging at least one employee of USI, while Mr. Anderson still remained an employee of USI, to consider accepting employment at Lockton and by making misleading statements about the uncertainty of those employees' future employment prospects at USI.  A current employee of USI's Aviation Practice Group indicated that when she was contacted by Lockton's internal recruiter in October 2019, she reported the call to Dean Anderson and Mr. Anderson told her she should call the recruiter back because her job was in jeopardy and he could not assure her that she would still have a job at USI at the end of the year. This evidence suggests that Mr. Anderson made these improper statements as part of his and the other Former Employees' orchestrated scheme with Lockton to improperly raid USI's Aviation Practice Group. Thus, Lockton clearly had plans to recruit the entirety of USI's Aviation Practice Group in 2019 and succeeded in convincing half of the Group's employees to jump ship to Lockton.

55.    In the wake of the Former Employees' announcements of their departures in early December 2019, two additional employees working in USI's Aviation Practice Group informed USI that they were resigning to accept employment with Lockton. These two employees, Rikin Patel and Kimberly Grier, worked closely with the Former Employees and served important support roles in servicing the clients of USI's Aviation Practice Group. Ms. Grier was an Account Executive who was skilled in client strategy. Mr. Patel, who was in USI's training program, was responsible for creating the business plan for USI's Aviation Practice Group and gained a detailed knowledge of the practice group. Mr. Patel's desk was located just outside of Dean Anderson's office in the Atlanta office of USI.  After Mr. Patel's departure, USI management learned that Mr. Patel participated in several closed door meetings with the Former Employees in the weeks leading up to the Former Employees' departures.  The departure of Mr. Patel and Ms. Grier further disrupted USI's ability to service its clients' accounts. Notably, the same attorneys representing the Former Employees also represent Ms. Grier and Mr. Patel.

## The Coordinated Resignations of the Former Employees

56.    On December 9, 2019, without providing any advance notice, the Former Employees abruptly and unexpectedly attempted to terminate their employment with USI, effective immediately, by submitting letters of resignation to

USI. The Former Employees' letters of resignation are referred to herein collectively as the "Letters."

57.    Pursuant to the Letters, the Former Employees' resignations were purported to be effective immediately, notwithstanding the Notice and Duty of Loyalty Provisions in the contracts of both Dean Anderson and Taylor Anderson. Lockton, having obtained copies of the Agreements, knew that requiring Dean and Taylor Anderson to attempt to resign "immediately" without giving the required notice would be a breach of the Notice and Breach of Duty Provisions.

58.    The timing of the Former Employees' resignations clearly was planned in advance and coordinated by Lockton and the Former Employees. They occurred within minutes of each other, and the Letters used nearly identical language. Further, each of the Former Employees was represented by the same attorney, whose fees have been paid for by Lockton.

59.    At or before the time they submitted the Letters to USI, the Former Employees each sent nearly identical emails to clients of USI informing them of their immediate departure. USI did not consent to or instruct the Former Employees to send these emails to its clients. Such coordination required the Former Employees and Lockton to work together in planning the timing and circumstances surrounding their departure.

60.    These coordinated efforts to reach out to USI's clients were done to disrupt USI's business and to capitalize on that disruption to try to induce USI's clients to move their accounts to Lockton, and in an effort to improperly solicit the business of those clients on behalf of Lockton.

**<u>Lockton's Coordinated Efforts to Steal USI's Clients.</u>**

61.    Lockton assisted the Former Employees in preparing to solicit and in soliciting USI's clients. This assistance by Lockton was planned prior to the resignation or purported resignations of the Former Employees as evidenced by the Former Employees' direction, upon their resignation or purported resignation, to USI's clients to contact a Lockton employee, Manoj Sharma, to obtain information about transferring their accounts even though Mr. Sharma was not licensed to handle the clients' accounts.

62.    On or about November 18, 2019, after Taylor Anderson and Roger Maldonado had accepted Lockton's offers of employment but weeks before resigning or attempting to resign from USI, met with David Brosbell, a Senior Partner at Purves Redmond Limited, in Mr. Brosbell's Toronto office. Taylor Anderson and Roger Maldonado were reimbursed by USI for the trip expenses, including dinner with Mr. Brosbell and USI's client, Field Aerospace. Since 2012, Mr. Brosbell had been the Canadian broker for insurance products and services for

Field Aerospace, a client of USI. As part of his role, Mr. Brosbell provided recommendations to Field Aerospace on American insurance brokers, and from 2012 through December 2019, Mr. Brosbell recommended that Field Aerospace place their insurance with USI.

63.     When Taylor Anderson and Roger Maldonado met with Mr. Brosbell on or about November 18, 2019 in Toronto under the guise of doing work for USI, these Former Employees informed Mr. Brosbell that they intended to resign from USI and join Lockton, but that they had not informed USI of their intention to resign. Upon hearing Taylor Anderson and Roger Maldonado's intention of leaving USI and joining Lockton, Mr. Brosbell told them that he would recommend that Field Aerospace switch its American broker to Lockton after they joined Lockton.

64.     Taylor Anderson and Roger Maldonado continued to communicate with Mr. Brosbell about USI's client, Field Aerospace. Notably, soon after Roger Maldonado resigned, on December 11, 2019, he sent Mr. Brosbell contact information for Mr. Sharma to facilitate Field Aerospace's switch of business form USI to Lockton. Mr. Brosbell, who had had no prior dealings with Manoj Sharma, sent the contact information to the Field Aerospace representatives via email within an hour of receiving it from Roger Maldonado. Soon thereafter, either Roger Maldonado or Taylor Anderson told Mr. Brosbell that Lockton still had not received

a broker of record transfer letter from Field Aerospace, so Mr. Brosbell once again reached out to a representative of Field Aerospace encouraging him to send the transfer forms to Lockton. These pre- and post-resignation discussions among the Former Employees and Mr. Brosbell, in addition to the actions taken by these Former Employees to direct Mr. Brosbell to Mr. Sharma and Lockton, indicate that Lockton and the Former Employees had laid the ground work for the successful solicitation of Field Aerospace way before the Former Employees had submitted their purported resignations.

65.     On or about this same time period, both Taylor Anderson and Roger Maldonado spoke directly with Brian Love at Field Aerospace, and Taylor Anderson specifically told Mr. Love that he was considering joining Lockton.

66.     After the purported resignations, Lockton and Mr. Sharma's involvement in the solicitation of USI's clients continued. For example, Chris Crutchfield, a client contact from Rally Point Management, Inc. ("Rally Point") called Taylor Anderson the day he sent his resignation email to clients. Taylor Anderson responded to Mr. Crutchfield by saying "I am not able to discuss your account, but Manoj can." Mr. Crutchfield then texted the President of Rally Point and told him to contact Mr. Sharma about transferring the accounts because "[h]e'll be familiar with the situation and should be able to help facilitate the move."

67.     Another example of Lockton and Mr. Sharma's involvement in the Former Employees' solicitation of USI's client is when Irena Leigh, the in-house counsel at In-Flight Crew Connections, LLC ("ICC") texted Taylor Anderson to ask about switching ICC's brokerage account to Lockton. Taylor Anderson responded, "I will give you a call shortly." Taylor Anderson later texted Ms. Leigh that all *"account dialog needs to run through . . . Manoj Sharma," who is "prepared for your call."* ICC later submitted a broker of record letter transferring its business to Lockton.

68.     The Former Employees, likely at the direction of Lockton, also secretly communicated with several other USI clients about their impending resignations from USI. The Former Employees made these communications to USI's clients well before they had provided USI with notice of their intent to leave. The purpose of these communications was to solicit the clients' business and to put them on advance notice of the Former Employees' forthcoming abrupt purported resignations from USI in violation of Dean Anderson's and Taylor Anderson's contractual notice requirements, thus interfering with USI's contractual right to have the opportunity to appropriately transition and try to maintain the business of these clients. The Former Employees made these improper pre-resignation communications to USI's clients as part of their orchestrated scheme with Lockton to improperly raid USI's

Aviation Practice Group and divert substantial business from that client in violation of the Former Employees' legal obligations to USI.

69.     Shortly after their resignations or purported resignations, the Former Employees informed many other USI clients to contact Mr. Sharma about transferring their accounts to Lockton.

70.     The Former Employees also took other steps to interfere with USI's ability to appropriately transition the business of its Aviation Practice Group clients, including by providing USI with intentionally incomplete transition lists at the time of their purported resignations and making misleading and inaccurate statements to USI's clients after accepting employment with Lockton, including to inform clients that after their departures there was no one left at USI who could appropriate service the clients' needs.

71.     Since December 9, 2019, USI has received at least 25 broker of record letters representing at least 34 of its clients asking that their broker of record be changed to Lockton.  In just the sixty-day period after Dean and Taylor Anderson's attempted resignations, USI received at least 22 broker of record letters representing at least 28 of its clients.  The business that Lockton has unlawfully taken from USI through this improper scheme measures more than $1 million annually in revenue.

## COUNT ONE:
## TORTIOUS INTERFERENCE WITH CONTRACTUAL AND BUSINESS RELATIONS – NOTICE AND DUTY OF LOYALTY PROVISIONS AND COMMON LAW DUTIES

72.     USI restates and incorporates herein by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

73.     Former Employees Dean Anderson and Taylor Anderson had enforceable agreements with USI that contained the Notice Provisions which required them to provide sixty (60) days' advance written notice to USI prior to terminating their employment with USI. *See* DA Employment Agreement § 8.2; TA Employment Agreement § 8.2. The Notice Provisions were reasonable and necessary to protect the legitimate business interests of USI.

74.     Former Employees Dean Anderson and Taylor Anderson had enforceable agreements with USI that contained the Duty of Loyalty Provisions. *See* DA Employment Agreement § 2.3; TA Employment Agreement § 2.4. The Duty of Loyalty Provisions were reasonable and necessary to protect the legitimate business interests of USI.

75.     Lockton had knowledge of the Notice Provisions and the Duty of Loyalty Provisions. Having knowledge of these contractual obligations, Lockton willfully engaged in wrongful and malicious conduct designed to induce Dean

Anderson and Taylor Anderson to breach the Notice Provisions and the Duty of Loyalty Provisions in an effort to benefit Lockton's business to the detriment of USI's business.

76.     There is no justification for Lockton's wrongful interference with the Notice Provisions and the Duty of Loyalty Provisions.

77.     Through the conduct described above, Lockton encouraged Dean Anderson and Taylor Anderson to violate the Notice Provisions and Duty of Loyalty Provisions by submitting letters of resignation to USI on December 9, 2019 that purported to be effective immediately. Lockton wrongfully and maliciously encouraged and assisted Dean Anderson and Taylor Anderson to breach the Notice Provisions and Duty of Loyalty Provisions by offering employment to the Andersons and employing the Andersons immediately after their purported resignations when Lockton knew that the Andersons would still be employed by USI and still be bound by their Agreements with USI.

78.     Moreover, Lockton, a direct competitor of USI, wrongfully and maliciously assisted Dean and Taylor Anderson in their competing against USI and soliciting USI clients, contrary to the Anderson's contractual obligations in the Duty of Loyalty Provisions and their common law duties to USI, when they were still employees of USI during the sixty-day notice period. Lockton knowingly accepted

at least 22 broker of record letters from at least 28 of USI's clients during the sixty-day notice period from USI clients that Lockton knew were transferring their business to Lockton because of the Andersons' breaches of the Agreements and their common law duties.

79.    By virtue of this conduct, Lockton has tortiously interfered with USI's contractual and business relationships with Dean Anderson and Taylor Anderson.

80.    As a proximate result of Lockton's tortious interference, USI has suffered substantial injury, including lost business opportunities, lost profits, and damages to USI's goodwill.

81.    Accordingly, Lockton is liable to USI for the damages caused to USI by its tortious interference with the Notice Provisions and the Duty of Loyalty Provisions and the Andersons' common law duties to USI.

## COUNT TWO:
## TORTIOUS INTERFERENCE WITH CONTRACTUAL AND BUSINESS RELATIONS – NON-COMPETE AND NON-SOLICITATION COVENANTS

82.    USI restates and incorporates herein by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

83.    The Former Employees had enforceable agreements with USI not to compete with USI and not to solicit USI's clients during their employment with USI

and for a certain time period thereafter. *See* DA Employment Agreement § 7.5 (Non-Compete Covenant); DA Employment Agreement § 7.6, TA Employment Agreement § 7.6, and RM Employment Agreement § 4.6 (Client Non-Compete Covenants); DA Employment Agreement § 7.7, TA Employment Agreement § 7.5, and RM Employment Agreement § 4.5 (Non-Solicitation Covenants).

84.    The Non-Compete Covenant, the Client Non-Compete Covenants, and the Non-Solicitation Covenants are reasonable and necessary to protect the legitimate business interests of USI.

85.    Lockton had knowledge of the Non-Compete Covenant, the Client Non-Compete Covenants, and the Non-Solicitation Covenants. Having knowledge of these contractual obligations, Lockton willfully engaged in wrongful and malicious conduct designed to have the Former Employees breach the Non-Compete Covenant, the Client Non-Compete Covenants, and the Non-Solicitation Covenants in an effort to benefit Lockton's business to the detriment of USI's business.

86.    There is no justification for Lockton's wrongful interference with the Non-Compete Covenant, the Client Non-Compete Covenants, and the Non-Solicitation Covenants.

87.    Through the conduct described above, Lockton willfully and maliciously induced Dean Anderson to violate the Non-Compete Covenant as

Lockton knew that Dean Anderson's competitive conduct occurred within the Restricted Geographic Area during the term of his employment. Dean Anderson's acceptance of employment with a direct competitor of USI, Lockton, constituted a violation of the Non-Compete Covenant. Dean Anderson violated such Covenant with Lockton's assistance, by working on behalf of Lockton to transfer business from USI to Lockton.

88.    Through the conduct described above, Lockton willfully and maliciously induced the Former Employees to violate the Client Non-Compete Covenants by moving the business of 36 USI's clients from USI to Lockton.

89.    Through the conduct described above, Lockton willfully and maliciously induced the Former Employees to violate the Non-Solicitation Covenants, including by emailing clients of USI's Aviation Practice Group with whom they had not previously had contact to notify them of their departure, for the purpose of diverting or attempting to divert services away from USI with respect to existing USI client accounts and inducing the termination, cancellation or non-renewal of existing USI Client accounts.

90.    By virtue of this conduct, Lockton has tortiously interfered with USI's contractual and business relationships with the Former Employees.

91.     As a result of Lockton's tortious interference, USI has suffered substantial injury, including lost business opportunities, lost profits, and damages to USI's goodwill.

92.     Accordingly, Lockton is liable to USI for the damages caused to USI by its tortious interference with the Non-Compete Covenant, the Client Non-Compete Covenants, and the Non-Solicitation Covenants.

## COUNT THREE:
## TORTIOUS INTERFERENCE WITH CONTRACTUAL AND BUSINESS RELATIONS – RAIDING

93.     USI restates and incorporates herein by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

94.     Lockton wrongfully and maliciously raided USI's Aviation Practice Group. As evidenced by Lockton's concerted efforts starting in the middle of 2019 and continuing through December 2019, Lockton attempted to recruit and induce virtually all of USI's employees in the Aviation Practice Group, many of which had enforceable employment agreements, to leave USI and/or to breach enforceable agreements with USI.

95.     USI's business interests have been damaged by Lockton's tortious behavior, namely the loss of several of its employees in the Aviation Practice Group, including the practice group leader, and such loss has resulted in a severe loss of

business and employee talent. Moreover, after Taylor Anderson and Roger Maldonado began working for Lockton, in an attempt to further harm the Aviation Practice Group and draw more USI clients to Lockton, Taylor Anderson and Mr. Maldonado told USI clients that no one was left at USI to service their accounts.

96.    As a result of Lockton's tortious behavior, USI has suffered substantial injury, including lost business opportunities, lost profits, and damages to USI's goodwill

97.    Accordingly, Lockton is liable to USI for the damages caused to USI by its tortious behavior.

## COUNT FOUR:
## ATTORNEYS' FEES

98.    USI restates and incorporates herein by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

99.    Lockton acted in bad faith in wrongfully and maliciously encouraging Dean and Taylor Anderson to breach the Notice Provisions and the Duty of Loyalty Provisions.  Lockton acted in bad faith in wrongfully and maliciously encouraging and assisting the Former Employees to breach the Non-Compete Covenant, the Client Non-Compete Covenants, and the Non-Solicitation Covenants.

100.   Lockton acted in bad faith in raiding USI's Aviation Practice Group and convincing several of USI's employees in such Group and/or working on aviation insurance issues to leave USI and join Lockton and attempting to convince at least four other USI employees to also leave and join Lockton.

101.   By virtue of the conduct described above, Lockton have acted in bad faith, been stubbornly litigious and have caused USI unnecessary trouble and expense.

102.   Pursuant to O.C.G.A. § 13-6-11, USI is entitled to its costs and expenses, including reasonable attorneys' fees.

## COUNT FIVE:
## PUNITIVE DAMAGES

103.   USI restates and incorporates herein by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

104.   Lockton's foregoing tortious conduct demonstrated malice, wantonness, an entire want of care, and conscious indifference towards the consequences of their actions, and such conduct was undertaken with the specific intent to harm USI.

105.   Punitive damages should be awarded in an amount sufficient to deter, penalize, and punish Lockton in light of the circumstances of this case.

## **PRAYER FOR RELIEF**

WHEREFORE, USI respectfully requests the following relief:

(a)      That the Court award compensatory and punitive damages arising from

the Lockton's tortious interference;

(b)      That the Court award USI all attorneys' fees and costs it has incurred

and will incur in connection with this action; and

(c)      That the Court award of such other and further relief as it deems just

and proper.

## **JURY DEMAND**

USI demands a jury trial on the claims asserted in this Complaint.

Respectfully submitted this 11th day of June, 2020.

**PARKER HUDSON RAINER & DOBBS LLP**

s/ Jared C. Miller
Nancy H. Baughan
Georgia Bar No. 042575
Jared C. Miller
Georgia Bar No. 142219
Julie A. Wood
Georgia Bar No. 023749
Matthew M. Weiss
Georgia Bar No. 718795
303 Peachtree Street, NE, Suite 3600
Atlanta, Georgia 30308
Phone: (404) 523-5300
Fax: (404) 522-8409
E-mail:    nbaughan@phrd.com

jmiller@phrd.com
jwood@phrd.com
mweiss@phrd.com

*Attorneys for USI Insurance Services LLC*