**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

**USI INSURANCE SERVICES LLC,**

**Plaintiff/Counter-Defendant,**

**v.**

**SOUTHEAST SERIES OF LOCKTON COMPANIES, LLC,**

**Defendant/Counterclaimant.**

**CIVIL ACTION FILE NO.**

**1:20-cv-02490-SCJ**

**ORDER**

This matter appears before the Court on the Motion to Dismiss Counterclaims filed by USI Insurance Services, LLC. Doc. No. [19]. [1]

## I. BACKGROUND

A review of the record shows that on July 8, 2020, Defendant Southeast Series of Lockton Companies, LLC ("Lockton") filed a counterclaim against

[1] All citations are to the electronic docket unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software. However, transcript page citations will be derived from the actual transcript.

Plaintiff USI Insurance Services, LLC ("USI") arising from alleged "deliberately false and/or highly misleading statements made to Lockton's customers by USI and its representatives, in a clear effort to [tortiously] interfere with Lockton's contractual and/or business relations and engage in deceptive trade practices under O.C.G.A. § 10–1–373." Doc. No. [11], ¶ 1. Lockton's four specific claims/causes of action are: (1) tortious interference with contractual relations or business relations; (2) deceptive trade practices; (3) attorneys' fees; and (4) punitive damages. Doc. No. [11].

The factual allegations of the counterclaim are as follows.

On December 9, 2019, Taylor Anderson, Roger Maldonado, and Dean Anderson joined Lockton, a privately held, global organization that provides insurance services to over 50,000 clients worldwide. Doc. No. [11], ¶¶ 6, 8. These individuals were previously employed with USI (hereinafter "the former employees") and had employment agreements with USI. Id. ¶ 16.

"In December 2019, certain clients [to include Fulcrum Concepts, LLC and Tenax Aerospace Holdings, LLC] previously serviced by [the former employees] began to voluntarily transition their business away from USI by assigning Lockton as their broker of record." Id. ¶ 12. "USI had knowledge that . . . its

former clients . . . transitioned their business to Lockton because it received [a] broker of record letter notifying USI of the change." Id. ¶ 14.

On December 10, 2019, the former employees filed an action for declaratory judgment and injunctive relief against USI, styled Jameson Taylor Anderson et al. v. USI Advantage Corp., et al. (or the "Related Action"), Civil Action No. 1:19-cv-5582-SCJ. Id. ¶ 15. In this lawsuit, the former employees challenge the enforceability of their employment agreements with USI. Id.

USI filed counterclaims against the former employees and an Emergency Motion for Temporary Restraining Order and Preliminary Injunction on December 18, 2019, seeking to enjoin the former employees from allegedly violating their employment agreements with USI. Id. ¶ 16.[2]

On January 6, 2020, this Court granted-in-part and denied-in-part USI's

[2] The Court takes judicial notice of the filings in consolidated Civil Action No. 1:19-cv-5582-SCJ and considers the documents attached to the counterclaim and motion to dismiss, as said documents appear central to the counterclaim and authenticity is not challenged. See Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002) (discussing the Rule 12(b)(6) incorporation by reference doctrine); see also Fed. R. Civ. P. 10(c).

Motion for Temporary Restraining Order. Id. ¶ 17. On April 21, 2020, the Court issued its ruling on USI's Motion for Preliminary Injunction. Id. ¶ 19. The Preliminary Injunction closes the order with the following statement of the Court:

> If any party contacts a client, prospective client, or former client of USI Insurance or Lockton for the purposes of sharing or discussing this Order, any other party shall be entitled to address the Order and its applicability, or lack thereof, to the party (or the client, prospective client, or former client).

Id. ¶ 23.

On January 16, 2020, after the issuance of the Temporary Restraining Order, Matthew Marchisotto, a Vice President for USI, sent email correspondence to a partner of NTC Group, owner of Tenax Aerospace Holdings, LLC ("Tenax"), a client of Lockton's (and former client of USI). Id. ¶ 24. In this email correspondence, Mr. Marchisotto stated that USI obtained an injunction against Taylor Anderson, Roger Maldonado, and Dean Anderson "that prohibits them from servicing the Tenax account along with the few other accounts that they attempted to take with them." Id. ¶ 25. Lockton alleges that "Mr. Marchisotto's email . . . falsely stated that Taylor Anderson and Roger Maldonado could not

service Tenax," and was sent with a purpose to mislead and confuse Tenax to lure Tenax back to USI under threat of violating a federal court order. Id. ¶¶ 26, 27.

After the issuance of the Preliminary Injunction order, on April 29, 2020, Counsel for USI, Nancy H. Baughan, sent a series of letters to certain of Lockton's customers, "under the guise of informing each Lockton customer of the applicability of the Preliminary Injunction." Id. ¶ 28. In these letters, Ms. Baughan stated that the Preliminary Injunction "prohibits [Lockton's customers] and their employees and representatives from acting in concert or participation with the Andersons and/or Mr. Maldonado in any manner that would violate the Order, such as by acting in concert or participation with the Andersons and/or Mr. Maldonado in violating the non-competition and non-solicitation restrictions that are enforced by the Order." Id. ¶ 29. Lockton alleges that "[t]hese statements were false and highly misleading, in that the Preliminary Injunction does not apply directly to Lockton's customers nor does it require Lockton's customers to do or not do anything with respect to receiving insurance services from Lockton to be in compliance with the Preliminary Injunction." Id. ¶ 30. Lockton further alleges: "these correspondences naturally caused confusion and concern for Lockton's customers because it was unclear what Ms. Baughan's

correspondences were asking Lockton's customers to do or not do, or whether the Preliminary Injunction required Lockton's customers to cease receiving insurance services from Lockton." Id. ¶ 31. Lockton also states: "[o]n information and belief," this series of correspondence from Ms. Baughan on behalf of USI was intended to achieve a desired effect of causing confusion and inducing Lockton's customers into ending, undermining, or diminishing their contractual relations and business relations with Lockton, under threat of violating a federal court order." Id. ¶ 34.

Counsel for Tenax attempted to clarify Ms. Baughan's correspondence by asking for confirmation that "the Preliminary Injunction in no way prohibits Tenax from doing business with whomever it chooses in any aspect of its business, including in its procurement of insurance coverage." Id. ¶ 35.

Instead of agreeing with counsel for Tenax, Lockton alleges that Ms. Baughan caused further confusion by responding as follows:

> USI does not contend that the Preliminary Injunction requires Tenax to return to USI for its aviation-related business or that the Preliminary Injunction requires Tenax to cease doing business with Lockton, so long as it does not do so in a way that violates the Preliminary Injunction. However, we do not agree that Tenax is permitted to conduct business with [Taylor Anderson,

> Roger Maldonado, and Dean Anderson] in any way that would violate the Preliminary Injunction.

Id. ¶ 36.

Lockton further alleges that "[a]s a result of USI's deliberately false and/or highly misleading statements about Lockton's ability to service its customers, some of Lockton's customers have sought to require Lockton to provide indemnity for attorneys' fees and expenses caused by USI's deliberate attempts to interfere with Lockton's customers." Id. ¶¶ 39, 46. Lockton states that "[a]s a direct and proximate result of USI's above-alleged intentional interference with Lockton's contracts and relations with its customers, Lockton has also suffered damage, including, but not limited to, loss of goodwill with its customers in an amount according to proof at trial." Id. ¶ 47.

On July 20, 2020, USI filed a Motion to Dismiss Lockton's Counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Doc. No. [19]. On August 19, 2020, Lockton filed a response in opposition to USI's Motion to Dismiss. Doc. No. [27]. On September 2, 2020, USI filed its reply brief. This matter is now ripe for review.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a counterclaim to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pleadings do not require any particular technical form. Fed. R. Civ. P. (8)(d)(1). However, labels, conclusions, and formulaic recitations of the elements of the case of action "will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a counter-defendant may move to dismiss a counterclaim for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).

"To decide whether a complaint[3] survives a motion to dismiss, [courts] use a two-step framework." McCullough v. Finley, 907 F.3d 1324, 1333 (11th Cir. 2018). First, the court identifies "the allegations that are 'no more than conclusions,'" [as] [c]onclusory allegations are not entitled to the assumption of truth. Id. (citations omitted). "Second, after disregarding conclusory allegations,

[3] Where the applicable legal authority utilizes the word "complaint," the Court equally applies the standard to the pending counterclaim—for purposes of this Order. Similarly, where the applicable legal authority utilizes the word "plaintiff," the Court applies the principle to the counterclaimant herein.

[the Court] assume[s] any remaining factual allegations are true, [identifies the elements that the counterclaimant must plead to state a claim] and determine[s] whether those factual allegations 'plausibly give rise to an entitlement to relief.'" Id.; see also Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009) (beginning the 12(b)(6) analysis "by taking note of the elements a plaintiff must plead to state a claim . . . .") and Speaker v. U.S. Dep't. of Health & Human Servs. Ctrs. for Disease Control & Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010) ("In ruling on a 12(b)(6) motion, the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff.") and Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

A counterclaim will be dismissed for failure to state a claim only if the facts as pled do not state a claim that is plausible on its face. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555–56. In order to state a plausible claim, a counterclaimant need only plead "factual content that allows the court to draw the reasonable inference" that the counter-defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678. "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to

raise a reasonable expectation that discovery will reveal evidence" of the claim. Twombly, 550 U.S. at 556.

"[W]hile notice pleading may not require that the pleader allege a specific fact to cover every element or allege with precision each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1282–83 (11th Cir. 2007) (quotations omitted).

## III. ANALYSIS

The Court now considers whether each of the four claims listed in Lockton's counterclaim states a claim upon which relief can be granted.

### A. Tortious Interference with Contractional Relations or Business Relations

"Tortious interference with business relations is a distinct and separate tort from that of tortious interference with contractual relations, although some of the elements of the two torts are similar." Sweet City Landfill, LLC v. Lyon, 352 Ga. App. 824, 833, 835 S.E.2d 764, 774 (2019) (citations and quotations omitted).

Under Georgia law, a counterclaimant may sustain a claim for tortious interference with a business relationship where the counterclaimant establishes:

> (1) improper action or wrongful conduct by the [counter-defendant] without privilege; (2) the [counter-defendant] acted purposely and with malice with the intent to injure; (3) the [counter-defendant] induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the [counterclaimant]; and (4) the [counter-defendant's] tortious conduct proximately caused damage to the [counterclaimant].

Metro Atlanta Task Force for the Homeless, Inc. v. Ichthus Cmty. Tr., 298 Ga. 221, 230, 780 S.E.2d 311, 321 (2015) (citations omitted).

"An essential element of a tortious interference with business relations claim 'is that the alleged tortfeasor induced a third party or parties not to enter into or continue a business relationship with the [counterclaimant].'" Sweet City Landfill, LLC, 352 Ga. App. at 834 (citations omitted).

"A cause of action for intentional interference with contractual rights must be based on the intentional and non-privileged interference by a third party with existing contractual rights and relations." Id. (citations and quotations omitted); see also Gordon Document Prod., Inc. v. Serv. Techs., Inc., 308 Ga. App. 445, 449, 708 S.E.2d 48, 53 (2011) ("Tortious interference claims, whether asserting

interference with contractual relations [or] business relations, . . . share certain common essential elements: (1) improper action or wrongful conduct by the defendant without privilege;[4] (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or their parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.").

As correctly noted by USI, in the case *sub judice*, "Lockton's tortious interference claim is based upon two separate communications — one by a USI employee to a Tenax affiliate and one by USI's attorneys to counsel for certain of USI's former clients that had switched their business to Lockton." Doc. No. [19-1], p. 11. The Court begins by considering the attorney communications.

[4] "This privilege, 'while primarily applicable to claims of libel or slander, may also be asserted as a defense to a claim of tortious interference with contractual relations.'" Rema Tip Top/N. Am., Inc. v. Shaw-Almex Indus., Ltd., No. 1:15-CV-01838-AT, 2015 WL 11492540, at *6 (N.D. Ga. Nov. 18, 2015) (citing Choice Hotels Int'l, Inc. v. Ocmulgee Fields, Inc., 222 Ga. App. 185, 188, 474 S.E.2d 56, 59 (1996)).

### *1. Communications by USI's Attorney*

In its motion to dismiss, USI asserts that Lockton failed to plead facts supporting the required elements of a tortious interference claim, as the alleged attorney communications on which Lockton relies "do not constitute improper or wrongful conduct" in that they are truthful. Doc. No. [19-1], pp. 2, 12. USI cited Rule 65(d)(2) and states that the letters were sent because "it was necessary for USI to provide notice of the Injunction to the third-party clients to whom the Injunction related." Id. at p. 13.[5] USI further asserts that whether the recipients of the letters were confused by the letters is irrelevant. Id.

"[I]mproper conduct means wrongful action that generally involves predatory tactics such as physical violence, fraud or misrepresentation, defamation, use of confidential information, abusive civil suits, and unwarranted criminal prosecutions." Gordon Document Prod., Inc. v. Serv. Techs., Inc., 308 Ga. App. 445, 449, 708 S.E.2d 48, 53 (2011) (citations omitted).

---

[5] USI also cites the language of the Preliminary Injunction order as a basis for sending the letters. Doc. No. [19-1], p. 16. However, the focus of this Order will be on the Rule 65(d)(2) notification argument.

In opposition, Lockton asserts that USI's correspondence was false and highly misleading, and accordingly, "wrongful conduct," as "the Preliminary Injunction on its face could never apply to any of Lockton's customers, as none of them are located within the 'Restricted Geographic Area' (i.e., Charlotte or within 100 miles of Atlanta) detailed throughout the Preliminary Injunction." Doc. No. [27], p. 13 (citing Doc. No. [19-3]). Lockton asserts that USI's Rule 65(d)(2) arguments fail because its "customers could not be found to be in 'active concert or participation' with any party bound by the Preliminary Injunction merely by being customers of Lockton." Doc. No. [27], p. 14.

The misrepresentation or misleading arguments are key to this Court's resolution of the pending motion concerning the attorney communications as Lockton has failed to cite any authority that indicates that causing confusion (from letters sent by USI counsel to counsel for Lockton's clients) satisfies the "improper conduct" element of the tortious interference claim.

The Court finds that Lockton's non-conclusory allegations do not support a plausible claim for misrepresentation, as even if the recipients of the letters were not located within the "Restricted Geographic Area" referenced in the Preliminary Injunction Order, the recipients could be subject to the injunction to

the extent that they were aiding and abetting a party bound by the injunction (or were in active concert or participation with any party bound by the inunction) in carrying out prohibited activities. See ADT LLC v. NorthStar Alarm Servs., LLC, 853 F.3d 1348, 1352 (11th Cir. 2017) (indicating that Rule 65(d)(2) contemplates that nonparties can be enjoined to the extent that they "aid and abet the party bound by the injunction in carrying out prohibited acts.") and Fed. R. Civ. P. 65(d)(2)(C) ("The order binds only the following who receive actual notice of it by personal service or otherwise . . . other persons who are in active concert or participation with [the named-party bound by the injunction]). While Lockton is correct that its customers could not be found to be in "active concert or participation" with a party bound by the Preliminary Injunction merely by being customers of Lockton,[6] there could be a finding if the customer acted beyond the normal customer relationship to aid the former employees in carrying out prohibited acts.[7] To this regard, the Court cannot say as a matter of law that an

[6] As stated by the Georgia Supreme Court, a "company cannot prevent [former employees' from merely accepting overtures from [former employer's] customers," as such would be an unreasonable restraint on trade. Orkin Exterminating Co. v. Walker, 251 Ga. 536, 538, 307 S.E.2d 914, 917 (1983).

[7] The Court recognizes the "no evidence" of aiding and abetting citation in Lockton's

attorney preemptively notifying non-parties of the injunction (or sending the notice to those for which the injunction "might apply") was improper conduct within the context of a tortious interference with contractual/business relations claim. Cf. Rema Tip Top/N. Am., Inc. v. Shaw-Almex Indus., Ltd., No. 1:15-CV-01838-AT, 2015 WL 11492540, at *6 (N.D. Ga. Nov. 18, 2015) (discussing injunction notification letters being "sent beyond those to whom it ***might*** apply . . . .") (emphasis added).[8] Accordingly, the Court finds that Lockton has failed to state a tortious interference claim upon which relief can be granted as to the USI attorney communications.[9]

---

brief (Doc. No. [27], p. 14) concerning its clients; however, as correctly noted by USI, there was some evidence in the consolidated civil action that the former employees were using intermediaries to solicit clients as referenced on page 11 of the Preliminary Injunction order. Doc. No. [31], pp. 11–12 (citing Doc. No. [19-3]).

[8] USI's statement in its brief that Lockton has failed to cite a single case that supports its theory of tortious interference based on attorney communications (in circumstances similar to the case *sub judice*) is also well taken. Doc. No. [31], p. 8 n.4.

[9] USI also asserts that the statements in the letters concerning the Preliminary Injunction are privileged and cannot support Lockton's tortious interference claim. Doc. No. [19-1], pp. 2, 14 (citing O.C.G.A. § 51-5-8, which states in relevant part: "All charges, allegations, and averments contained in regular pleadings filed in a court of competent jurisdiction, which are pertinent and material to the relief sought, whether legally sufficient to obtain it or not, are privileged."). USI further asserts that "to the extent the letters from USI's counsel do not quote from the Preliminary Injunction, the statements in the letters are still conditionally privileged under O.C.G.A. § 51-5-7," which largely concerns consideration of good faith. In response, Lockton asserts that USI's privilege arguments

**2. *Communications by USI's Employee***

The Court finds that Lockton sufficiently pled a claim for tortious interference with contractual relations as to its claim concerning the email sent by its VP, Mr. Marchisotto. However, Lockton has not sufficiently pled a claim for tortious interference with business relations, as explained *infra*.

**i. <u>Improper action or wrongful conduct without privilege</u>**

In its motion, USI appears to acknowledge that Mr. Marchisotto's communication is *not* "a precisely accurate account of the TRO," but states that Mr. Marchisotto's statement is privileged to the extent that it was made with "a good faith intent . . . to protect his . . . interest in a matter in which [he] is concerned." Doc. No. [19-1], p. 20 (citing O.C.G.A. § 51-5-7(3)). As noted above,

---

are inappropriate for a motion to dismiss. Lockton also distinguishes USI's citation of authority as being based on summary judgment/record evidence or inapposite. Doc. No. [27], pp. 16–17. After review, the Court agrees that in the case *sub judice*, the question of privilege involves consideration of good faith and cannot be determined at the motion to dismiss stage. <u>See e.g.</u>, <u>Saye v. Deloitte & Touche, LLP</u>, 295 Ga. App. 128, 132–33, 670 S.E.2d 818, 822 (2008) ("Construing, as we must, the complaint in the light most favorable to [plaintiff], she has alleged that [defendant] acted maliciously, without privilege, and with an intent to injure her by inducing [employers] to terminate her employment, causing her to suffer economic and emotional damage. At this stage in the proceedings, [plaintiff] has sufficiently alleged malice and, in turn, a question remains as to whether the privilege has been overcome."). Nevertheless, as the improper conduct analysis is determinative, the Court grants the pending motion to dismiss as to the USI attorney communications.

the Court does not deem it proper to consider good faith privilege assertions at the motion to dismiss stage of the case, accordingly, the Court upholds Lockton's arguments and concludes that the counterclaim has plausible allegations of improper/wrongful conduct without privilege.

**ii. Intent to injure**

USI asserts that Lockton fails to plead any facts beyond conclusory statements regarding USI's intent in making such statements. Doc. No. [19-1], p. 2. In opposition, Lockton states that to show malice it need only provide allegations that USI acted "with knowledge of [Lockton's] rights and with intent to interfere therewith." Doc. No. [27], p. 18 (citing Wright v. Apartment Inv. & Mgmt. Co., 315 Ga. App. 587, 596 n.8 (2012) ("An act is malicious when done with the knowledge of [counterclaimant's] rights and with intent to interfere therewith."). Here, Lockton has "alleged that USI acted purposely and with malice with the intent to injure when it communicated false and highly misleading statements to [a Lockton customer] for the purpose of inducing [the customer] to end [its] business relations with Lockton." Id. The Court finds that such allegations are sufficient to establish a plausible claim.

### iii. Inducement or discontinuation

USI also asserts that "Lockton fails to allege that any of the communications at issue actually interfered with any contractual or business relationship of Lockton." Doc. No. [19-1], p. 2.

#### *(a) Contractual relations*

As for the tortious interference with contractual relations claim, USI's argument fails in that "the courts of this state have recognized that such interference with a contractual right or relationship need not result in a breach of the contract to be actionable. It is sufficient if the invasion retards performance of the duties under the contract or makes the performance more difficult or expensive." Artrac Corp. v. Austin Kelley Advert., Inc., 197 Ga. App. 772, 774–75, 399 S.E.2d 529, 532 (1990). After review, the Court finds that Lockton has clearly alleged (through the allegations concerning client requested indemnity agreements and loss of goodwill) that USI's actions made its performance of the client contracts at issue more difficult.

#### *(b) Business relations*

However, the Court sustains USI's argument as to the tortious interference with business relations claim in that "[t]he essential features of a cause of action

for tortious interference with **business relations** [as opposed to contractual relations] are that the defendant, acting improperly, without privilege, and with the malicious intent to injure [counterclaimant], induces a third party not to enter into or to continue a business relationship with [counterclaimant], which causes [counterclaimant] financial injury." Lively v. McDaniel, 240 Ga. App. 132, 134, 522 S.E.2d 711, 714 (1999) (citing Jenkins v. Gen. Hosps. of Humana, 196 Ga.App. 150, 151, 395 S.E.2d 396 (1990)) (emphasis added). In the case *sub judice*, in the absence of Lockton identifying a single client lost, Lockton has failed to state a claim for tortious interference with business relations.

**iv. Proximate cause**

USI further asserts that "Lockton fails to adequately allege that any alleged tortious act by USI caused Lockton any damages." Doc. No. [19-1], p. 2. In contrast, Lockton states that it "specifically alleged financial damages and loss of goodwill, stating that '[a]s a direct and proximate result of USI's [alleged] intentional interference with Lockton's contracts and relations with its customers, . . . Lockton has been required to enter into, indemnity agreements to cover the costs of legal fees and expenses for its customers due to the intended confusion caused by USI's highly misleading correspondence to Lockton's

customers[.]" Doc. No. [27], p. 23 (citing Doc. No. [11], Countercl., ¶ ¶ 46, 47 ("As a direct and proximate result of USI's [alleged] intentional interference . . . Lockton has also suffered damages, including . . . loss of goodwill with its customers[.]").[10] After review, the Court is unable to uphold USI's arguments regarding proximate cause and concludes that Lockton's allegations are sufficient to establish a plausible claim for tortious interference with contractual relations based upon the USI employee communication by Mr. Marchisotto.

### B. Deceptive Trade Practices

O.C.G.A. § 10-1-372(a)(8) states in relevant part that "[a] person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he . . . [d]isparages the goods, services, or business of another by false or misleading representation of fact." O.C.G.A. § 10-1-372(a)(8).[11] "In order to prevail in an action under this part, a complainant need not prove competition

[10] USI's voluntary payment arguments fail based on the authority cited in Lockton's brief concerning the inapplicability of the voluntary payment doctrine for payments made to third parties arising from tort claims (as opposed to contract claims). Doc. No. [27], p. 24–25.

[11] While §372(a)(8) is not specifically cited in the counterclaim, the language of said subsection is referenced in paragraph 50 of the counterclaim and discussed by Lockton in its opposition brief. Doc. No. [27], p. 27.

between the parties or actual confusion or misunderstanding." Id. § 372(b). In addition, the sole remedy provided under [the Uniform Deceptive Trade Practice Act] is injunctive relief." Lauria v. Ford Motor Co., 169 Ga. App. 203, 206, 312 S.E.2d 190, 193 (1983) (citing O.C.G.A. § 10-1-372). "To obtain an injunction, the [counterclaimant] must show that he is likely to be damaged by the defendant's deceptive trade practice in the future." Sharpe v. Wells Fargo Home Mortg., No. 1:12-CV-04292-CC-GGB, 2013 WL 12109445, at *4 (N.D. Ga. Apr. 4, 2013), *report and recommendation adopted*, No. 1:12-CV-04292-CC, 2013 WL 12106955 (N.D. Ga. July 15, 2013) (citing O.C.G.A. § 10-1-373(a)); see also City of Rome v. Hotels.com, L.P., 549 F. App'x 896, 902 (11th Cir. 2013) ("injunctive relief is only appropriate 'to prevent, prohibit or protect from future wrongs . . . [it] does not afford a remedy for what is past.'") (citing Catrett v. Landmark Dodge, Inc., 253 Ga. App. 639, 644, 560 S.E.2d 101 (2002)).[12]

In its motion to dismiss, USI asserts that this claim fails because "the communications at issue were privileged, and Lockton fails to allege any facts

---

[12] In its counterclaim, Lockton seeks injunctive relief to prevent USI from further communicating with Lockton's customers regarding the customers' ability to be serviced by Lockton for their insurance needs and to correct any false and misleading statements toward its customers. Doc. No. [11], p. 49.

(beyond conclusory statements) that USI made those communications with malice." Doc. No. [19-1], p. 2. USI further asserts that this claim fails because "Lockton alleges only a past injury, which cannot – as a matter of law – support Lockton's statutory claim." Id.

While, as indicated above, the Court does not deem it proper to consider good faith privilege assertions at the motion to dismiss stage of the case, the Court will address the question presented as to whether a past injury can, as a matter of law, support Lockton's statutory claim for deceptive trade practices. After review, the Court concludes that USI's argument is essentially a standing argument in that "[b]ecause injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party shows 'a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury.'" Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1329 (11th Cir. 2013) (citations omitted). In Houston, the Eleventh Circuit also referenced its prior case law to note that a claimant "pursuing 'injunctive relief in federal court must plead a genuine threat of imminent injury.'" (citing Stevens v. Premier Cruises, Inc., 215 F.3d 1237, 1242–43 (11th Cir. 2000). In the case *sub judice*, Lockton "alleges no facts showing a real and immediate threat of future harm. Indeed, the

[counterclaim] only contains allegations of acts and injuries that occurred [over] a year ago.[13] Redress for past injuries alone does not support a claim for injunctive relief." Anibal v. William, No. 3:17-CV-1290-J-25JRK, 2017 WL 8772154, at *2 (M.D. Fla. Nov. 22, 2017); see also Silverstein v. Procter & Gamble Mfg. Co., No. CV 108-003, 2008 WL 4889677, at *4 (S.D. Ga. Nov. 12, 2008) ("A plaintiff who demonstrates past harm, but does not allege ongoing or future harm, has not shown that he is 'likely to be damaged' within the meaning of section 10–1–373(a)."). Accordingly, Lockton has not established standing to pursue injunctive relief for its deceptive trade practices claim.

**C. Attorneys' Fees and Punitive Damages**

As correctly noted by Lockton, because Lockton has sufficiently alleged counterclaims for tortious interference with contractual relations, Lockton's derivative counterclaims for attorneys' fees and punitive damages must remain. Doc. No. [27], p. 30 (citing Towns v. Dirs. Guild of Am., Inc., No. 1:19-cv03248, 2020 WL 4001131, at *7 (N.D. Ga. July 15, 2020) (noting that claims for punitive

[13] More specifically, Lockton states in its counterclaim that it "has suffered damage as a result of USI's above-alleged deceptive trade practice," but does not allege future or ongoing damage/harm. Doc. No. [11], ¶ 51.

damages and attorneys' fees are derivative claims and stating that said derivative claims survive against a defendant where two substantive claims remain); Spears v. Kaiser Found. Health Plan of Ga., Inc., No. 1:17-cv-02102-TCB-RGV, 2019 WL 1225214 (N.D. Jan. 30, 2019) (same)).

## IV. CONCLUSION

For the above-stated reasons, the Motion to Dismiss Counterclaims filed by USI Insurance Services, LLC. Doc. No. [19] is **GRANTED IN PART AND DENIED IN PART**. The motion is granted as to the tortious interference claims concerning USI's attorney communications to Lockton's clients; the tortious interference with business relations claim; and the deceptive trade practices claim. The motion is denied as to the following claims: (1) tortious interference with contractual relations (based on the USI employee communication concerning Lockton's client, Tenax); (2) attorney's fees; and (3) punitive damages.

**IT IS SO ORDERED** this 10th day of March, 2021.

s/Steve C. Jones
**HONORABLE STEVE C. JONES**
**UNITED STATES DISTRICT JUDGE**