## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

USI INSURANCE SERVICES LLC,   )
                              )
      Plaintiff,         )
                              )
v.                            )    **Civil Action File No.**
                              )    **1:20-cv-02490-SCJ**
SOUTHEAST SERIES OF       )
LOCKTON COMPANIES, LLC,   )
                              )
      Defendant.      )
_____/

## SOUTHEAST SERIES OF LOCKTON COMPANIES, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

### I.    <u>INTRODUCTION</u>

Taylor Anderson, Dean Anderson, and Roger Maldonado (collectively "the Andersons and Maldonado") left their employment with Plaintiff USI Insurance Services, LLC ("USI") to join Defendant Southeast Series of Lockton Companies, LLC ("Lockton") in December 2019.  Although ███████████████████ ███████████████████████ USI alleges that Lockton's act of hiring the Andersons and Maldonado amounts to tortious interference with USI's contractual and business relations and justifies the recovery of punitive damages from Lockton.

1

USI seeks to convert this employment dispute into a tortious interference action and recover punitive damages against Lockton for no other reason than they are competitors within the same industry.  Georgia law, however, does not allow USI to transform its breach of contract claims against the Andersons and Maldonado into a tort claim with punitive damages against Lockton.  Even if USI could prove that the Andersons and Maldonado breached a contract, to recover in tort against Lockton, USI would need to show more than Lockton's mere hiring of the Andersons and Maldonado with prior knowledge of their contractual agreements with USI.  Indeed, under well-settled Georgia law, USI could not recover against Lockton even if they could prove that Lockton "persuaded [the Andersons and Maldonado] to break a contract."[1]  Rather, to recover for tortious interference with contracts and business relations, USI must prove that Lockton engaged in "improper action or wrongful conduct without privilege" and that such conduct was "wrongful in itself."[2]  As the Court has previously ruled in this action, this requires evidence that Lockton engaged in "tactics such as physical violence, fraud or

---

[1] *Stefano Arts v. Sui*, 301 Ga. App. 857, 862, 690 S.E.2d 197, 202 (2010).

[2] *Id*.

misrepresentation, defamation, use of confidential information, abusive civil suits, and unwarranted criminal prosecutions." (ECF No. 81 at 13.)

Despite more than a year of discovery, there is no evidence that Lockton engaged in any improper action or wrongful conduct. Rather, all that USI has shown is that Lockton hired the Andersons and Maldonado with knowledge of their contracts with USI, offered them more money, provided office space, and agreed to indemnify them should their decision to join Lockton result in a lawsuit. None of these actions amount to "improper action or wrongful conduct," which would justify recovery for tortious interference with USI's contracts with the Andersons and Maldonado.

Further, any actions of Lockton fall under the fair competition privilege, which separately and independently defeats USI's claims. It is undisputed that USI and Lockton are competitors, that the hiring of these three employees did not create an illegal restraint of competition, and that Lockton's intent in hiring the Andersons and Maldonado was intended to advance its own interests. Lockton's hiring of the Andersons and Maldonado are therefore protected by the fair competition privilege. Thus, based on the undisputed evidence of the record, Lockton is entitled to summary judgment on all of USI's claims.

## II.    FACTUAL AND PROCEDURAL HISTORY

USI and Lockton are both involved in providing risk management and insurance brokerage services.  (ECF No. 1 [Compl.], ¶ 2; ECF No. 11 [Countercl.], ¶ 6).  USI acknowledges that USI and Lockton are in "an extremely competitive industry."  (Compl., ¶ 16).

On December 9, 2019, the Andersons and Maldonado became employed at Lockton after resigning from USI.  It is undisputed that there is nothing inherently wrong or improper with competitors hiring employees from other insurance companies.  Indeed, USI's corporate ███████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████.  (Exhibit A, [Allen Depo.] at 192:2-9).  ███████████████████████████ ████████████████████████████████████████████████ ██████████  (*Id.* at 192:10-13.)  ███████████████████████ ████████████████████████████████████████████.  (*Id.* at 192:14-20.)

Following their move to Lockton, the Andersons and Maldonado filed an action for declaratory judgment and injunctive relief against USI to challenge the enforceability of their respective former employment agreements, and that action

was removed to this Court (hereinafter, "Related Action").  USI filed counterclaims for breach of contract against the Andersons and Maldonado and sought discovery from Lockton.

Six months later, USI brought the current action against Lockton, which was subsequently consolidated with the Related Action.  (ECF No. 6.)  USI brought three separate claims of tortious interference, as follows:

(1) Tortious Interference with Contractual and Business Relations—Notice and Duty of Loyalty Provisions and Common Law Duties with respect to Taylor Anderson and Dean Anderson;

(2) Tortious Interference with Contractual and Business Relations—Non-Compete and Non-Solicitation Covenants with respect to the Andersons and Maldonado; and

(3) Tortious Interference with Contractual and Business Relations—Raiding with respect to USI's Aviation Practice Group.

(Compl., ¶¶ 72-97.)  Based on these claims, USI sought recovery of attorneys' fees and punitive damages. (*Id.*, ¶¶ 98-105.)

Though there has been over a year of discovery, USI has yet to identify any improper or wrongful actions that Lockton took in recruiting the Andersons and Maldonado.  In deposition, ███████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████. (Allen

Depo. at 184:3-186:1).   Instead, USI sought to cobble together a portrait of

impropriety by identifying a host of actions attendant to hiring the Andersons and

Maldonado, none of which amount to an improper action under Georgia law.  Thus,

when asked to identify all acts by Lockton that USI claimed were wrongful, USI's

representative stated the following:

- ████████████████████████████████
  ██████;

- ████████████████████████████████
  █████████;

- ████████████████████████████████
  ████████████████████████████;

- ████████████████████████████████
  ████████████████;

- ████████████████████████████████
  ███████████████████████████.

(Allen Depo. at 175:21-178:3, 181:10-25). █████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████. (*Id.* at 302:3- 303:13).[3]

Similarly, in response to an interrogatory requesting the factual basis for USI's allegation that Lockton induced the Andersons and Maldonado to breach their contracts, USI merely indicated that the Andersons and Maldonado breached their contracts with USI and that Lockton coordinated the start date for the Andersons and Maldonado to join Lockton. (Exhibit B, [USI's Responses to Lockton's First Interrogatories] at pp. 51-61).

At most, these allegations show that Lockton was aware of the contracts between USI and the Andersons and Maldonado when it hired them. This does not rise to the level of improper action or wrongful conduct required to support a claim

---

[3] ██████████████████████████████████████████████████
████████████████████████████████████████████ (Allen
Depo. at 302:3-303:1).
████ (*Id.* at 316:4-23).
██████████ (*Id.*). Thus, to the degree that USI argues that Mr. Sharma's act of accepting phone calls from clients is "wrongful," it is not supported by the evidence of record.

of tortious interference and summary judgment is warranted for the reasons stated herein.

### III.    ARGUMENT AND CITATION OF AUTHORITY

As set forth below, the undisputed facts of record fail to identify any improper action or wrongful conduct that could transform a claim of breach of contract against the Andersons and Maldonado into a tort claim against Lockton for punitive damages.  Thus, the Court should grant Lockton summary judgment on all of USI's claims.

#### A. Standard for Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of showing, by reference to the record, that there is no genuine dispute as to any material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).  The moving party discharges its summary judgment burden by showing an absence of evidence to support an essential element of the nonmoving party's case. *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548; *Fitzpatrick v. City of Atlanta*, 2 F.3d

8

1112, 1115 (11th Cir. 1993). There is no "genuine [dispute] for trial" when the record as a whole could not lead a rational trier of fact to find for the nonmoving party. *Celotex*, 477 U.S. at 325; *see also Nebula Glass Int'l, Inc. v. Reichhold, Inc.*, 454 F.3d 1203, 1210 (11th Cir. 2006) (the nonmoving party cannot survive summary judgment by pointing to "a mere scintilla of evidence").

**B. <u>USI Cannot Recover for Tortious Interference With Contractual or Business Relations.</u>**

This Court previously dismissed Lockton's claim against USI for tortious interference with contractual and business relations based on the act of USI's counsel sending numerous unsolicited letters to Lockton's clients. (ECF No. 81). In its ruling, this Court noted that tortious interference with contract is different from interference with business relations, but they both share some of the same elements. (*Id.* at 10, *citing Sweet City Landfill, LLC v. Lyon*, 352 Ga. App. 824, 833, 835 S.E.2d 764, 774 (2019)). Both torts require a plaintiff to establish: (1) that the defendant engaged in "improper action or wrongful conduct without privilege"; (2) that the defendant acted purposefully and with malice; and (3) that the tortious conduct proximately caused damages. (*Id.* at 11-12, *citing Metro Atlanta Task Force for the Homeless, Inc. v. Ichthus Cmty. Tr.*, 298 Ga. 221, 230, 780 S.E.2d 311, 321 (2015)

and *Gordon Document Prod., Inc. v. Serv. Techs., Inc*., 308 Ga. App. 445, 449,708 S.E.2d 48, 53 (2011)).[4]

Here, USI has no evidence to support the very first element of its claims because it cannot show that Lockton acted improperly and without privilege. Moreover, as set forth in the Summary Judgment Motion filed by the Andersons and Maldonado in the Related Action, the Andersons and Maldonado did not breach any contract with USI, and USI has suffered no cognizable damages related to the alleged breaches.[5]  Thus, Lockton is entitled to summary judgment as a matter of law on USI's claims for tortious interference.

> i.   *USI Cannot Show Lockton Engaged in Improper Conduct or Wrongful Action.*

As the Eleventh Circuit has held, to transform a breach of contract into the tort of tortious interference with contract, a "plaintiff must show more than that the defendant simply persuaded a person to break a contract." *Coloplast Corp. v. Am.*

---

[4] The only distinction between the claims is that a claim tortious interference with contract must be based on "existing contractual rights," while a claim for tortious interference with business relations can be based on inducing a party not to enter into or continue a business relationship regardless of contractual rights.  (ECF No. 81 at 11-12.)

[5] Lockton incorporates by reference the arguments made by the Andersons and Maldonado in the Related Action and has no objection to USI incorporating by reference its response thereto.

*Breast Care, L.P.*, 209 F. App'x 945, 946 (11th Cir. 2006); *see Sommers Co. v. Moore*, 275 Ga. App. 604, 605, 621 S.E.2d 789, 791 (2005) (where evidence showed the defendant's actions had the effect of interrupting a sales agreement with plaintiff, but "[t]his [did] not mean, however, that [defendant's] actions were tortious."). Stated otherwise, there is nothing inherently tortious about encouraging a party to breach a contract. *Kirkland v. Tamplin*, 285 Ga. App. 241, 244, 645 S.E.2d 653, 656 (2007); *see also United States v. Blankenship*, 382 F.3d 1110, 1133 ("It is not illegal for a party to breach a contract; a contract gives a party two equally viable options (perform or pay compensation), between which it is generally at liberty to choose."). In *Kirkland*, the evidence showed that the defendants "persuaded" their mother to breach a settlement agreement. 285 Ga. App. at 244. Despite this evidence, the Georgia Court affirmed the grant of summary judgment on the plaintiff's tortious interference claim, noting that "the element of improper conduct is missing." *Id.* Thus, even if USI had evidence showing that Lockton actively encouraged the Andersons and Maldonado to breach a contract with USI, this fact alone would be insufficient to support recovery.

To support a claim for tortious interference, therefore, "the plaintiff must adduce evidence of 'improper action or wrongful conduct.'" *Coloplast*, 209 F. App'x at 946 (*quoting Sommers*, 621 S.E.2d at 791). As Eleventh Circuit noted,

Georgia courts have defined improper actions as those which "constitute conduct wrongful in itself." *Id.*; see *Metro Atlanta Task Force for the Homeless*, 298 Ga. at 231 ("Improper actions constitute conduct wrongful in itself . . . ."); *see also Stefano Arts*, 301 Ga. App. at 862 (same); *Fortson v. Brown*, 302 Ga. App. 89, 92, 690 S.E.2d 239, 242 (2010) (same). As this Court previously noted, for purposes of a tortious interference claim, improper conduct "means wrongful action that generally involves predatory tactics such as physical violence, fraud or misrepresentation, defamation, use of confidential information, abusive civil suits, and unwarranted criminal prosecutions." (ECF No. 81 at 13, *citing Gordon Document Prod.*, 308 Ga. App. at 449 (citations omitted)). Thus, courts have found that a defendant's use of confidential financial information about a competitor's revenues can constitute improper action to support a claim for tortious interference. *Tom's Amusement Co. v. Total Vending Servs.*, 243 Ga. App. 294, 297, 533 S.E.2d 413, 418 (2000). Similarly, making false statements to potential investors has been held to be sufficient to support a claim of tortious interference. *Metro Atlanta Task Force for the Homeless, Inc. v. Ichthus Cmty. Tr.*, 298 Ga. 221, 231, 780 S.E.2d 311, 321 (2015).

Here, there is no evidence that Lockton used confidential information or made any misleading statements. Indeed, there is simply no record evidence of any

improper actions or conduct by Lockton that could be considered "wrongful in itself." *Coloplast*, 209 F. App'x at 946.  USI in fact admitted it did not have ***any evidence*** that Lockton engaged in fraud, misrepresentation, physical violence, or used confidential information to induce any breach of contract by the Andersons or Maldonado:



(Allen Depo at 184:12-186:1 (emphasis added).)

The actions of Lockton that USI does identify are simply not wrongful, which is fatal to its tortious interference claims.  USI alleges Lockton hired the Andersons and Maldonado knowing that they had contractual obligations to ██████████████ ████████████████████████.  (*Id.* at 176:15-177:1; 178:1-3).  Even if true, this is not improper or wrongful conduct.  Indeed, knowing of the existence of a contract and persuading someone to breach the contract is not sufficient evidence under Georgia law to support a claim for tortious interference.  *Kirkland*, 285 Ga. App. at 244.

Similarly, USI's claim that Lockton paid a salary to the Andersons and Maldonado, coordinated their start dates, and provided them office space during the sixty days after they left USI cannot be considered "wrongful in itself," as it is part and parcel with any new employment opportunity.  Lockton's later listing of Dean Anderson on a chart sent to its own clients—indeed *after* Dean Anderson ended his employment with USI—cannot be said to be improper or in any way seen as inducing Dean Anderson to breach any contract with USI.  Likewise, Lockton's acceptance of business from clients who voluntarily left USI and desired to move to Lockton cannot be deemed wrongful.  USI's own witnesses confirmed as much ████████████████████████████████████████████████████ ████████████████████.  (Exhibit C, [Johnson Depo.] at 32:24-33:3, 227:3-7.)

Moreover, Lockton entering into an indemnification agreement with the Andersons and Maldonado cannot be considered "improper in itself," as indemnification contracts are enforceable under Georgia law and consistent with public policy. *See Carrion v. Smokey, Inc.,* 164 Ga. App. 790, 790, 298 S.E.2d 584, 584-585 (1982) (an indemnification agreement signed by the plaintiff was valid and enforceable because "[t]he general rule in Georgia is that a contractual waiver of liability . . . is valid . . [and] a contract cannot be said to be contrary to public policy unless the General Assembly has declared it to be so."). Indeed, the Eleventh Circuit has held that requiring payment of an indemnity claim as a condition of consenting to an assignment was not "wrongful conduct" that would amount to tortious interference. *Cableview Commc'ns of Jacksonville, Inc. v. Time Warner Cable Se., LLC*, 901 F.3d 1294, 1305 (11th Cir. 2018) (applying Florida law which, like Georgia, requires a wrongful act to support a claim of tortious interference).

Further, many of the original allegations in USI's Complaint have proven to be entirely false and misleading. In its complaint, USI alleged as follows:

> A current employee of USI's Aviation Practice Group indicated that when she was contacted by Lockton's internal recruiter in October 2019, she reported the call to Dean Anderson and Mr. Anderson told her she should call the recruiter back because her job was in jeopardy and he could not assure her that she would still have a job at USI at the end of the year. **This evidence suggests that Mr. Anderson made these improper statements as part of his and the other Former Employees' orchestrated scheme with Lockton to**

> **improperly raid USI's Aviation Practice Group.** Thus, Lockton
> clearly had plans to recruit the entirety of USI's Aviation Practice
> Group in 2019 and succeeded in convincing half of the Group's
> employees to jump ship to Lockton.

(Compl., ¶ 54 (emphasis added).)   USI admitted that the "current employee"

referenced herein was Amira Couch.  (Allen Depo. at 189:2-13.)  In fact, when

questioned at deposition, 

(Exhibit D, [Couch Depo.] at 75:12-13.)

(*Id.* at

75:22.)

Despite this testimony, USI compounded its inaccuracies when responding to

interrogatories.  When asked to identify all facts supporting the allegation that

Lockton sought to recruit virtually all of USI's employees in its Aviation Practice

Group, USI stated, *inter alia*, as follows:

> Finally, Amira Couch, an employee of USI, indicated that when she
> was contacted by Lockton's recruiter in October 2019, she reported
> the call to Dean Anderson, and Mr. Anderson told her she should
> consider calling the recruiter back because he could not make any
> guaranties [sic] about her job security.  According to Couch, starting
> several months before his resignation, Dean Anderson made it known
> to his team that he would be leaving USI, purposely giving employees
> the impression that their jobs were in jeopardy.

(USI's Responses to Lockton's First Interrogatories, p. 63-64). 

."

(Couch Depo. at 124:17-19).

." (*Id.* at 124:20-125:4).

(*Id.* at 125:10-13).  Far from showing any concentrated action by Lockton, Ms. Couch's testimony confirms that Dean Anderson was not recruiting employees—either on his own or on behalf of Lockton.

Similarly, in response to interrogatories, USI swore that "From October 2019 through the end of 2019, Lockton's in-house recruiters communicated with almost all of the operations support team members from USI's Aviation Practice Group about leaving USI and joining Lockton."  (USI's Responses to Lockton's First Interrogatories, p. 62).  USI alleged that this purportedly showed "Lockton clearly had plans to recruit the entirety of USI's Aviation Practice Group in 2019." (*Id.* at p. 63).

USI confirmed the information in this interrogatory response came from USI employee Beverly Fant.  (Allen Depo. at 190:25-191:16).  When questioned at

deposition, however, Ms. Fant testified that she had never spoken to any recruiters and she could only name a few members of USI's team who had been recruited:

> Q.     Were you contacted by any recruiters in 2019?
> A.     I was not.
> Q.     Who, of the other members of the aviation practice group, did you come to learn were contacted by recruiters in 2019?
> A.     I believe Amira Couch, Sarah Torres, Brittany Barnett. *I believe those are the only ones that I – that actually said they were contacted by a recruiter.*

(Exhibit E, [Fant Depo.] at 36:15-23 (emphasis added).)   Notably, Ms. Fant confirmed that Ms. Torres and Ms. Barnett left USI to join Willis, not Lockton.  (*Id.* at 37:17-18).  Thus, USI's claim of a grand scheme to "recruit the entirety of USI's Aviation Practice Group" is simply a work of fiction, and its claim of tortious interference with respect to "raiding" must be dismissed in the absence of any evidence of improper action or wrongful conduct by Lockton.

Despite over a year of discovery and over 20 depositions, USI simply has no evidence of any action by Lockton which is improper or wrongful in and of itself. Thus, all of USI's tortious interference claims fail, and the Court should grant Lockton summary judgment on this ground alone.

ii.   *Any Actions by Lockton Were Subject to the Fair Competition Privilege.*

In addition to failing to show that Lockton took any improper action or wrongful conduct, USI's claims fail because USI cannot establish that the actions of Lockton were taken "without privilege."  As this Court noted previously, the issue of privilege is separate and distinct from whether there is evidence of any improper action.  (ECF No. 81 at 16, n.9).

In Georgia, a competitor is allowed to solicit employees as a matter of fair competition.  *American Bldgs. Co. v. Pascoe Bldg. Systems, Inc*., 260 Ga. 346, 348, 392 S.E.2d 860, 863 (1990).  The courts have recognized that the "fair competitive privilege" defeats a claim for tortious interference where the acts are taken in competition between the actor and competitor, the actor does not employ improper means, the actor does not intend to thereby create or continue an illegal restraint of competition, and the actor's purpose is at least in part to advance its interests in its competition with the other. *Orkin Exterminating Co. v. Martin Co*., 240 Ga. 662, 666, 242 S.E.2d 135, 138 (1978).

In *Gresham & Associates, Inc. v. Strianese*, 265 Ga. App. 559, 595 S.E.2d 82, 86 (2004), the court affirmed summary judgment for the defendant on the plaintiff's claim for tortious interference based on the defendant's soliciting and hiring away most of the plaintiff's property insurance department.  The court found that there

was no evidence of an illegal restraint of trade or competition and no evidence that the defendant used wrongful means to solicit the plaintiff's employees. *Id.* at 563. The court also noted that even though the defendant solicited and hired away most of the plaintiff's property insurance department, there was nothing in the record which could support a conclusion that the defendant's solicitation "destroyed or substantially injured the plaintiff's ability to function as an effective competitor." *Id.* The court thus held that even if there was evidence that the defendant "offered inducements" for the employees to leave, the defendants' actions were protected by the privilege of fair competition, which guards against the imposition of undue restraints on the pursuit of employment opportunities in the marketplace. *Id.* at 562.

The same is true here. The undisputed record evidence establishes that Lockton's actions were protected by the privilege of fair competition. Lockton and USI are admittedly direct competitors, and USI has acknowledged that part of its business model includes hiring talent from other insurance brokers. (Johnson Depo. 36:1-6). As such, the act of recruiting and hiring the Andersons and Maldonado involved competition between Lockton and USI, and as set forth above, USI has set forth no evidence of Lockton engaging in any improper or wrongful acts. Further, there is no evidence Lockton ever created or intended to create an illegal restraint of

trade.  In fact, USI agreed that its aviation group continued to thrive and had sufficient expertise to support its customers following the departure of the Andersons and Maldonado.  USI executives admitted that after the resignation of the Andersons and Maldonado, "███████████████████████████████ ███████████████████████████████ (Johnson Depo. 188:16-19; Allen Depo. 48:14-18); *see also Gresham*, 265 Ga. App. at 563 (affirming summary judgment based on the fair competition privilege where there was no evidence that defendant's solicitation of employees "destroyed or substantially injured" plaintiffs ability to function as an effective competitor).

Finally, Lockton's actions were clearly intended to advance its own interest, as Lockton expected to benefit from the hiring of the Andersons and Maldonado. (Exhibit F, [Sharma Depo.] at 302:18-302:25 (confirming that the hiring of the Andersons and Maldonado was "a good economic decision")).  Thus, in addition to the fact that Lockton did not engage in any wrongful conduct, USI's tortious interference claims should be dismissed under the fair competition privilege as a matter of law.

## C. USI Cannot Recover for Punitive Damages or Attorneys' Fees

Because USI cannot recover for any of its substantive claims for tortious interference, USI's derivative claims for punitive damages and attorneys' fees also

fail as a matter of law.  *See United Cos. Lending Corp. v. Peacock*, 267 Ga. 145, 147 (1996) (finding prerequisite to award of attorney's fees is "award of damages or other review on the underlying claim"); *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1304 (11th Cir. 2009) ("[a] punitive damages claim is derivative of a plaintiff's tort claim, and where a court has dismissed a plaintiff's underlying tort claim, dismissal of a plaintiff's punitive damages claim is also required") (citing *Boeing Co. v. Blane Int'l Group,* 276 Ga. App. 672, 624 S.E.2d 227, 231 (2005)).

## IV.   CONCLUSION

Under well-established Georgia law, a party seeking to transform a breach of contract claim into a claim of tortious interference for punitive damages must show that the defendant took some action that was "wrongful in itself."  When USI's hyperbole and false allegations are cast aside, the undisputed evidence of record confirms a single and undeniable fact: Lockton took no such improper action or wrongful conduct in hiring the Andersons and Maldonado.  Further, Lockton was operating under the fair competition privilege at all times.  Thus, all of USI's claims fail as a matter of law, and the Court should grant Lockton summary judgment on all of USI's claims.

Respectfully submitted this __13th__ day, August 2021.

**WARGO & FRENCH LLP**

/s/ David M. Pernini
Joseph D. Wargo
Georgia Bar No. 738764
David M. Pernini
Georgia Bar No. 572399
Tiffany N. Watkins
Georgia Bar No. 228805
999 Peachtree Street, NE, 26th Floor
Atlanta, Georgia 30309
Telephone: 404-853-1500
Facsimile:  404-853-1536
jwargo@wargofrench.com
dpernini@wargofrench.com
twatkins@wargofrench.com

*Counsel for Defendant Southeast Series of Lockton Companies, LLC*

## **RULE 7.1.D CERTIFICATE**

The undersigned counsel certifies that this document has been prepared with

Times New Roman 14-point font in accordance with Local Rule 5.1.C.

*/s/ David M. Pernini*
DAVID M. PERNINI

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this day, I electronically filed the foregoing **SOUTHEAST SERIES OF LOCKTON COMPANIES, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system, which will automatically send electronic notification to all counsel of record.

| | |
|---|---|
| Nancy H. Baughan | Warren R. Hall, Esq. |
| Jared C. Miller | Elizabeth M. Newton, Esq. |
| Matthew M. Weiss | Wayne M. Cartwright, Esq. |
| Julie A. Wood | Hall, Gilligan, Roberts & Shanlever, LLP |
| Parker, Hudson, Rainer & Dobbs, LLP | |
| 303 Peachtree Street, NE, Suite 3600 | 3340 Peachtree Road – Suite 1900 |
| Atlanta, Georgia 30308 | Atlanta, Georgia 30326 |
| nbaughan@phrd.com | whall@hgrslaw.com |
| jmiller@phrd.com | enewton@hgrslaw.com |
| mweiss@phrd.com | wcartwright@hgrslaw.com |
| jwood@phrd.com | |

Respectfully submitted this __13th__ day, August 2021.

**WARGO & FRENCH LLP**

*/s/ David M. Pernini*
David M. Pernini
Georgia Bar No. 572399