**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| JAMESON TAYLOR ANDERSON, ROBERT DEAN ANDERSON, and ROGER MALDONADO, | **)** **)** **)** **)** | <u>CONSOLIDATED CASES</u> <u>PURSUANT TO FED. R. CIV. P. 42</u> |
| Plaintiffs, | **)** **)** | |
| v. | **)** **)** | Civil Action No.: 1:19-cv-05582-VMC |
| USI INSURANCE SERVICES LLC, | **)** **)** | |
| Defendant. | **)** | |

| | | |
|---|---|---|
| USI INSURANCE SERVICES LLC, | **)** **)** | |
| Plaintiff, | **)** **)** | |
| v. | **)** **)** | Civil Action No.: 1:20-cv-02490-VMC |
| SOUTHEAST SERIES OF LOCKTON COMPANIES, LLC, | **)** **)** **)** | |
| Defendant. | **)** **)** | |

**SOUTHEAST SERIES OF LOCKTON COMPANIES, LLC'S
<u>CONSOLIDATED MOTIONS IN LIMINE</u>**

# I.   INTRODUCTION

Throughout this case, Plaintiff, USI Insurance Services, LLC ("USI"), has attempted to elicit improper, unduly prejudicial, and needlessly cumulative evidence in an effort to demonstrate that Taylor Anderson, Dean Anderson, and Roger Maldonado (the "Former Employees") have colluded with Defendant Southeast Series of Lockton Companies, LLC ("Lockton") purely to harm USI.  Indeed, USI's claims against Lockton are largely contingent on the outcome of USI's claims against the Former Employees.  Thus, with few exceptions, where USI has presented prejudicial evidence against the Former Employees in this consolidated trial, it will likely prejudice Lockton, and vice versa.   Accordingly, Lockton presents the following Motions *in Limine* for the Court's consideration and joins the Former Employees' Motions *in Limine*, to the extent that they are applicable to the claims against Lockton.

# II.   LEGAL STANDARD

Motions *in limine* are vital tools to exclude prejudicial, irrelevant, or otherwise inadmissible evidence before trial to avert unnecessary confusion, delays, or the introduction of unfairly prejudicial material.  *United States v. Roland*, No. 1:14-CR-291-SCJ, 2016 U.S. Dist. LEXIS 196981, at *1 (N.D. Ga. June 1, 2016); *Benjamin v. Experian Info. Sols., Inc.*, Civil Action No. 1:20-cv-2466-RWS, 2022 U.S. Dist.

LEXIS 97950, at *2 (N.D. Ga. Mar. 25, 2022) (motions *in limine* appropriate to exclude unduly prejudicial evidence). "The district court has wide discretion in determining the relevance of evidence produced at tria"| *Boyd v. Ala. Dep't of Corr.*, 296 F. App'x 907, 908 (11th Cir. 2008).

### III.   MOTIONS *IN LIMINE*

### 1.   *The Court Should Exclude Evidence on Issues That Have Already Been Established.*

As to the Former Employees and as explained in their Motions *in Limine*, only limited issues remain to be tried in the 2019 Case.[1]  As to the 2020 Case, the jury must consider USI's and Lockton's competing claims for tortious interference under Georgia law, as well as whether attorney's fees and punitive damages are appropriate.

First, despite the number of issues that have been resolved by the Court at summary judgment relating to the claims against the Former Employees, USI's submissions in the Proposed Pretrial Order show it intends to inundate the trial with evidence far exceeding the issues to be tried.  This evidence includes irrelevant deposition testimony and documents related to Dean Anderson's work for clients following their transfer to Lockton, emails sent by Rikin Patel, a former USI

---

[1] Throughout this brief, Case No. 1:19-cv-05582-VMC is referenced and cited as the "2019 Case," and Case No. 1:20-cv-02490-VMC is cited as the "2020 Case."

employee, actions taken by The Former Employees prior to their resignation from USI, and "competitive" actions taken by Dean Anderson and Taylor Anderson within 60 days after they resigned from USI and joined Lockton.

Because the vast majority of this evidence would be offered to prove issues of breach that have already been decided, the Court should exclude evidence that is not material to the sole question of solicitation as irrelevant. Fed. R. Evid. 402. USI's sole purpose in offering such evidence would be to inflame the jury with cumulative evidence of alleged wrongdoing that should be excluded pursuant to Fed. R. Evid. 403. Courts routinely grant motions *in limine* to exclude evidence on issues already decided on summary judgment. *See GPI Int'l Ltd. v. IBC Creative LLC*, 1:07-CV-1540-ODE, 2009 WL 10671357, at *2 (N.D. Ga. Sept. 16, 2009) (granting motion *in limine* to exclude evidence related to "the legal conclusions [the Court] made in its partial summary judgment order"). This is because presenting evidence on issues already decided has no probative value and merely wastes time, rendering it inadmissible per Fed. R. Evid. 402 and 403. *See generally Anderson v. Brown Indus.*, 4:11-CV-0225-HLM, 2014 WL 12521732, at *5-9 (N.D. Ga. Mar. 14, 2014).

The same conclusion is warranted here. The jury will already hear that Dean and Taylor Anderson breached their 60-day notice provisions, duties of loyalty, and fiduciary duties to USI. Allowing USI to re-litigate issues already decided is

unnecessary, wasteful of the Court's and the parties' time and resources, and will unfairly prejudice the Former Employees and Lockton and confuse the issues. There is no need to waste the jury's time by entering all the evidence at trial that caused the Court to reach its findings of breach. Accordingly, USI should not be permitted to present evidence on issues that have already been determined in its favor per Federal Rules of Evidence 402 and 403.

Second, the Court should also exclude evidence on the claims that were decided against USI on summary judgment because those were resolved by the Court. *Morales v. N.Y. State Dep't of Labor*, 530 F. App'x 13, 15 (2d Cir. 2013) (affirming exclusion of evidence related to claim dismissed on summary judgment); *Foley v. Town of Marlborough*, 3:19-CV-01481 (VAB), 2023 WL 122040, at *3-4 (D. Conn. Jan. 6, 2023) (granting motion *in limine* to bar evidence supporting claim already resolved at summary judgment). Presentation of evidence related to dismissed claims would be irrelevant, waste time and cause undue delay, warranting its exclusion under Fed. R. Evid. 401 and 403. Consequently, the Court should enter an order barring USI, its witnesses, and its counsel from presenting evidence or argument on previously dismissed claims. *See Fontana v. City of Fed. Way*, No. C11-998 RAJ, 2014 WL 202104, at *1 (W.D. Wash. Jan. 17, 2014) (barring any reference to plaintiff's dismissed claims pursuant to Fed. R. Evid 401 and 403).

## 2. USI Cannot Present Evidence and Argument That Clients Moved From USI to Lockton Because of Work Performed _After_ Clients Moved Their Business

The Court determined on summary judgment that Dean Anderson violated two of the non-compete covenants in his agreement with USI. Thus, breach has been established against Dean Anderson on Counts II and III, and the sole issues for trial are on the questions of causation and damages and the related claim against Lockton. (2020 Case, Doc. 206 at 18). USI may attempt to introduce evidence that Dean Anderson provided certain services to clients after they moved to Lockton in an attempt to prove that Dean Anderson's services caused the client to leave USI. This evidence should be excluded from trial for two reasons.

First, the Court has already determined as a matter of law on summary judgment that Dean Anderson violated the covenants at Counts II and III of the Amended Counterclaim. (2019 Case, Doc. 286 at 30-31, 34). Thus, evidence of Dean Anderson providing services is not relevant to any issue at trial related to liability. Fed. R. Evid. 402. Further, any such evidence would be improperly cumulative and prejudicial. Fed. R. Evid. 403.

Second, evidence regarding Dean Anderson's providing services to clients after they moved to Lockton cannot be probative on the issue of damages: i.e., why the client moved to Lockton. Evidence of conduct by Dean Anderson that occurred

5

after a client moved to Lockton cannot be a "cause" of something (the client moving to Lockton) that has already happened.  *North Carolina v. Fed. Energy Reg. Comm'n*, 112 F.3d 1175, 1188 (D.C. Cir. 1997) ("Obviously, a subsequent event cannot be the cause of something that is already in existence."); *Hester v. Paul Pub. Charter Sch.*, CV 21-3166 (JEB), 2023 WL 355913, at *8 (D.D.C. Jan. 23, 2023) ("A subsequent event cannot be the cause of a decision made previously."); *Contl. Ins. Co. v. Chemoil Corp.*, C 88 0085 TEH, 1988 WL 156750, at *2 (N.D. Cal. June 2, 1988) ("As a matter of logic, however, if a prior event occurs which is sufficient to cause the entire harm, a subsequent event cannot be a cause of the harm at all, because the harm is already done.").  Thus, evidence of Dean Anderson's subsequent conduct is not relevant, and cannot be offered, to explain the prior decision of the client to move to Lockton.  Fed. R. Evid. 402.

### 3. USI Cannot Inquire of or Comment on Communications Protected by Attorney Client Privilege

USI has repeatedly inquired and sought testimony about communications between the Former Employees and their counsel, and likewise, communications between Lockton employees and its counsel.  Presumably, USI seeks such information to argue that a party seeking an attorney's advice must be evidence that they have done something wrong.  Because such an implication is improper and at

direct odds with the attorney-client privilege and the rationale behind it, the Court should exclude such evidence.

The attorney-client privilege protects admissions and communications between the attorney, in his or her representational capacity, and the client, made for purposes of securing legal advice or assistance. *Lazar v. Mauney*, 192 F.R.D. 324, 328 (N.D. Ga. 2000); *see also, In re Grand Jury Proceedings 88–9 (MIA)*, 899 F.2d 1039, 1042 (11th Cir. 1990) (quoting *United States v. McConney*, 728 F.2d 1195, 1202 (9th Cir. 1984)).  As the U.S. Supreme Court has held, the attorney-client privilege is "the oldest of the privileges for confidential communications known to common law," and is based on the public purpose to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  By statute, Georgia excludes attorney-client communications from evidentiary use on public policy grounds.[2] O.C.G.A. § 24-5-501(a)(2); *see also Shipes v. BIC Corp.*, 154 F.R.D. 301, 304 (M.D. Ga. 1994) (applying Georgia law); *see also Dover v. Harrell*, 58 Ga. 572, 573 (1877) ("The

---

[2] Because this case is a diversity action, Georgia law applies to determine whether the attorney-client privilege protects the communications at issue. Federal Rule of Evidence 501 provides that, in civil proceedings to which state law applies, the privilege of a witness or person shall be determined by state law. Fed. R. Evid. 501.

statutory privileges of counsel are conferred for the benefit of their clients and are sacred.").  Once attorney-client relationship has been duly established between attorney and his client, legal advice confidentially communicated to client's authorized agents is by statute protected from discovery, and testimony concerning the content of such advice is inadmissible on grounds of public policy.  *Southern Guar. Ins. Co. of Georgia v. Ash*, 192 Ga. App. 24, 27 (1989); *Shipes*, 154 F.R.D. at 304 ("The attorney client privilege is absolute, prohibiting discovery of the privileged materials regardless of need.").  Accordingly, courts prohibit questioning whether a witness has conferred with his attorneys concerning the legal effect of a document, even when asked for purposes of showing the witness' awareness of the document's contents, since subsequent questioning concerning the nature of conversations with an attorney is improper.  *Morris v. Courts*, 59 Ga. App. 666, 688 (1939).

USI has repeatedly asked questions seeking to determine communications between the Former Employees and their attorney, Mr. Hall, including those where Lockton's corporate counsel ("Lockton's counsel") was present.  (*See, e.g.*, 2020 Case, Doc. 93-1, T. Anderson Dep. at 158; Doc. 92-1, R. Maldonado Dep. at 118-121; Doc. 103-1, M. Sharma Dep. at 170, 174-75).

All such communications are privileged.[3]  Therefore, USI should be precluded from any questioning regarding contents of these communications, as such testimony is inadmissible.  *Southern Guar. Ins. Co. of Georgia v. Ash*, 192 Ga. App. 24, 27 (1989).  Neither Lockton's corporate representative, Manoj Sharma, nor the Former Employees should be questioned regarding conferring with counsel about agreements with USI.

Moreover, federal courts of appeal consistently hold it is not appropriate for counsel to comment upon or for the jury to be permitted to draw an adverse inference from a party's rightful choice not to introduce privileged documents, testimony, or information at trial.  *See Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1341 (Fed. Cir. 2004) (no adverse inference shall arise from invocation of lawful privilege); *Nabisco, Inc. v. PF Brands, Inc*., 191 F.3d 208, 225-26 (2nd Cir. 1999) ("This privilege is designed to encourage persons to seek legal advice, and lawyers to give candid advice, all without adverse effect."), *overruled*

---

[3] The presence of Lockton's counsel during such communications does not defeat the privilege.  The joint defense doctrine serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel.  *U.S. v. Almeida*, 341 F.3d 1318, 1324 (11th Cir. 2003); *see also United States v. Schwimmer*, 892 F.2d 237, 244 (2d Cir. 1989).  Here, Lockton and the Former Employees are both defendants in claims by USI over the resignations of the Former Employees from USI, and it is undisputed that such discussions were covered by the joint defense privilege.

*on other grounds by Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418 (2003); *Lucent Info. Mgmt., Inc. v. Lucent Techs., Inc.*, 186 F.3d 311, 318 (3d Cir. 1999) ("[W]e will not draw an adverse inference from the raising of privilege."); *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1265 (9th Cir. 2000) (allowing the factfinder to draw "an adverse inference from an assertion of one's privilege not to reveal information is too high a price to pay"); *Parker v. Prudential Ins. Co.*, 900 F.2d 772, 775 (4th Cir. 1990) ("[A]n individual in a free society should be encouraged to consult with his attorney . . . . To protect that interest, a client asserting privilege should not face a negative inference about the substance of the information sought") (quotations omitted); *accord Datapoint Corp. v. Picturetel Corp.*, 215 F.3d 1344, 1344 (Fed. Cir. 1999) ("A jury should not be invited or instructed to draw a negative inference from a proper invocation of the attorney-client privilege."). The same principle applies to prohibit an adverse inference from proper assertion of work-product protection. *See In re Seagate Techs. LLC*, 497 F.3d 1360, 1369-70 (Fed. Cir. 2007) (invoking the attorney-client privilege or work product protection does not give rise to an adverse inference); *See also Knorr-Bremse*, 338 F.3d at 1344 (same).

Courts in the Eleventh Circuit have also acknowledged that no adverse inference may be drawn from the invocation of the attorney-client privilege. *In re*

*Terazosin Hydrochloride Antitrust Litigation*, 335 F. Supp. 2d 1336, 1365 (S.D. Fla. 2004) (invocation of attorney-client privilege cannot give rise to a negative inference) (citing *Knorr-Bremse*, 383 F.3d at 1344); *Lighthouse List Co., LLC v. Cross Hatch Ventures Corp.*, No. 13-60524-CIV, 2014 WL 11531800, at *9 (S.D. Fla. June 12, 2014), *report and recommendation approved in part*, No. 13-60524-CIV, 2014 WL 11531638 (S.D. Fla. July 15, 2014).

Thus, USI should not be permitted to make any comment, argument, or implication that the jury may draw any adverse inference premised upon the existence or the invocation of the privilege by the Former Employees or Lockton's corporate representative.  Specifically, USI should be prohibited from making any arguments that Former Employees were encouraged to break their agreements with USI by counsel based upon Lockton's and the Former Employees' invocation of the privilege.

Further, even if USI were to argue that there is some limited relevance to the fact that there were privileged discussions, any probative value would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.  *See* Fed. R. Evid. 403.  This would be entirely inconsistent with the basis for the attorney-client privilege—namely that all persons are entitled to full and frank communication with their attorneys.  *See Upjohn Co*, 449 U.S. at

389.  Thus, the Court should prohibit USI from asking questions designed to invoke the attorney-client privilege or make any arguments or comments seeking to create a negative inference from the fact that counsel was retained.

### 4. USI Cannot Present Evidence or Argument that Providing the Former Employees an Attorney and Indemnifying Them Are "Wrongful" Under Georgia Law

To establish a claim for tortious interference, USI will need to provide evidence that Lockton engaged in "improper action or wrongful conduct," which is defined as an act which is "wrongful in itself." *Sommers Co. v. Moore*, 275 Ga. App. 604, 606 (2005).

The essential elements of tortious interference in its various forms requires proof that the defendant: (1) engaged in improper action or wrongful conduct without privilege; (2) acted purposely and with malice with the intent to injure; (3) induced a breach of contractual obligations; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff. *Kirkland v. Tamplin*, 285 Ga. App. 241, 243 (2007). The first element, requiring "improper action or wrongful conduct," demands plaintiff "must show more than that the defendant simply persuaded a person to break a contract." *Kirkland*, 285 Ga. App. at 243 (citations and quotation marks omitted); *see also Stefano Arts v. Sui*, 301 Ga. App. 857, 862 (2010) (citing *Kirkland*, 285 Ga. App. at 244); *United States v. Blankenship*, 382 F.3d 1110, 1133

(11th Cir. 2004) ("It is not illegal for a party to breach a contract; a contract gives a party two equally viable options (perform or pay compensation), between which it is generally at liberty to choose.").  Rather, because the plaintiff must show the defendant performed an action that is "wrongful in itself," it must prove conduct that "generally involves predatory tactics such as physical violence, fraud or misrepresentation, defamation, use of confidential information, abusive civil suits, and unwarranted criminal prosecutions."  *Sommers*, 275 Ga. App. at 606 (2005) (finding no evidence that a lease was "fraudulent" when it was "motivated by legitimate business interests"); *see also Kirkland*, 285 Ga. App. at 244 ("Absent evidence of fraud, [the plaintiff] could not show that [the defendant's] actions were improper, an essential element of an action for tortious interference.").

The essence of this well-established law is that "wrongful" means that the conduct at issue would somehow be *independently tortious*.  *See Sommers Co.*, 275 Ga. App. at 606; *Kirkland*, 285 Ga. App. at 244.  Conversely, the invocation of a legal right *cannot* be considered wrongfully tortious.  *Cf. Cableview Comm'ns of Jacksonville, Inc. v. Time Warner Cable Se., LLC*, 901 F.3d 1294, 1306 (11th Cir. 2018) (interpreting similar Florida law to find that a party's "right to withhold its consent and assert its indemnity claim under contract" could not amount to an "improper purpose" to establish tortious interference claim).

13

Throughout this litigation, USI has argued that Lockton hiring counsel for the Former Employees and providing them indemnification can be evidence of wrongful conduct. (*See* 2020 Case, Doc. 121 at 27–30). These actions, however, are not wrongful in themselves, and cannot be considered an improper action as a matter of law. Thus, USI should not be permitted to provide evidence or argue that these legal actions amount to wrongful conduct.

Specifically, USI should not be permitted to argue or produce any evidence suggesting that Lockton's act of obtaining counsel for the Former Employees is "wrongful in itself." It is axiomatic that the Former Employees have a right to obtain independent legal counsel to appear on their behalf. *See Parker v. Prudential Ins. Co.*, 900 F.2d 772, 775 (4th Cir. 1990) ("[A]n individual in a free society should be encouraged to consult with his attorney[.]"); *In re Kathy P.*, 25 Cal. 3d 91, 102 (1979) ("Unquestionably [the defendant] had a right to counsel retained at her own expense. Due process assures that right even when a proceeding is wholly civil."); *cf. United States v. Romero*, 849 F.2d 812, 819 (3d Cir. 1988) ("[T]he most important decision a defendant makes in shaping his defense is his selection of an attorney."). Thus, the Court should exclude any argument that asserts or suggests that Lockton has acted "wrongfully" by providing counsel to the Former Employees.

Similarly, providing indemnification cannot be deemed wrongful or tortious. *See Hanna Paper Recycling, Inc. v. ZBR Publ'ns, Inc.*, 1 Mass. L. Rptr. 587, 1994 WL 879724, at *3–4 (Mass. Sup. Ct. Feb. 3, 1994) (finding that defendants' offer of indemnity did not amount to wrongful conduct under the standard in the *Restatement of Torts (Second)*). Indemnity is provided every day and is akin to insurance—the very business at issue in this case. USI should not be permitted to argue or present evidence so that the jury can find that providing indemnification is "wrongful."

Even if the evidence of Lockton providing counsel and indemnifying the Former Employees were permitted, allowing USI to argue or suggest through needlessly cumulative evidence that Lockton's act of providing counsel or indemnity is "wrongful" would confuse the issues and mislead the jury. Given the evidence that providing counsel and indemnification is not wrongful in itself, there is simply no probative value to these arguments, and any potential probative value is substantially outweighed by the concern of misleading the jury and improperly prejudicing Lockton and the Former Employees. *See* Fed. R. Evid. 403. Thus, the Court should prohibit USI from offering evidence or argument that Lockton's act of providing counsel or indemnification to the Former Employees is a wrongful act or amounts to tortious interference under Georgia law.

### 5. *USI Cannot Present Argument or Evidence Implying the Taking, Use, or Misappropriation of Confidential Information by the Former Employees*

At various times in this litigation, USI has suggested that the Former Employees and other former USI employees, specifically Rikin Patel, may have possessed USI's confidential information and implied that Patel and others may have used such information after resigning from USI and joining Lockton in December 2019. Indeed, USI designated significant deposition testimony from Rikin Patel concerning emails and attachments he sent to his personal email address while working at USI. (*See, e.g.*, 2020 Case, Doc. 96-1, Patel Dep. at 171–72). However, USI has never pleaded a claim to which such evidence or argument would be relevant, and there is no evidence of any taking of confidential information by any party in this matter. (2019 Case, Docs. 5, 134; 2020 Case, Doc. 1); *see* Fed. R. Evid. 401. USI has no claim against the Former Employees for conversion of its intellectual property, misappropriation of confidential information, or trade secret theft. Similarly, USI has never pleaded that Lockton, in hiring the Former Employees, misappropriated any of USI's confidential information. Thus, the Court should exclude all such evidence and argument from trial. *See Landsman v. City of Vero Beach*, No. 13-14375-CIV-GRAHAM/LYNCH, 2015 WL 10960961, at *2 (S.D. Fla. Oct. 21, 2015) (excluding evidence of police training budget where no

claim for negligent training was pleaded in amended complaint); *Broadcom Corp. v. Emulex Corp.*, No. SACV 09-01058-JVS (ANx), 2011 WL 13130705, at *6 (C.D. Cal. Aug. 20, 2011) (excluding evidence where party offered "no claim or defense which would make misappropriation relevant"); *Nat'l Corp. Tax Credit Fund VII v. Busching & GC Corp.*, No 3:04-CV-559BN, 2006 WL 1364556, at *1 (S.D. Miss. May 16, 2006) (excluding evidence of conspiracy where no claim was pleaded).

### 6. *USI Cannot Call Witnesses That Were Not Properly Disclosed or Identified to Discovery*

Overlooking discovery rules, USI unexpectedly added two witnesses, Paul Hanig and Tracy Moore, for the first time on its witness list in the Proposed Pretrial Order, leaving Lockton and The Former Employees without an opportunity to examine these USI employees.  To ensure fairness, Hanig and Moore should not be called to testify.

Federal Rule of Civil Procedure 37(c)(1) is unambiguous: a lack of disclosure results in no testimony.  Likewise, Federal Rule of Civil Procedure 26 requires parties disclose all individuals "likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i); *Nance v. Ricoh Elecs., Inc.*, 381 F. App'x 919, 922–23 (11th Cir. 2010) (holding trial court properly struck declaration of undisclosed witness).  USI did not identify Hanig and Moore in their

initial disclosures (2019 Case, Doc. 52), or in any of their updated disclosures, nor did USI otherwise identify these witnesses during the discovery process, such as in interrogatory responses, as witnesses with knowledge relevant to this dispute.

USI's introduction of these witnesses at such a late stage is purely gamesmanship and should not be rewarded. Lockton and The Former Employees were deprived of their chance to depose Hanig and Moore, so their testimony should be excluded. Echoing the decision in *ChemFree Corp. v. J. Walter, Inc.*, "[b]ecause [USI] did not disclose [Hanig] and [Moore] in their discovery disclosures, [Lockton and The Former Employees] w[ere] not given the opportunity to depose [them] on the issues related to this case." No. 1:04-CV-3711-JTC, 2009 U.S. Dist. LEXIS 131044, at *8-9 (N.D. Ga. May 26, 2009). Accordingly, USI should be precluded from calling Hanig and Moore as witnesses.

Respectfully submitted this   12th   day, April 2023.

**WARGO, FRENCH & SINGER LLP**

*/s/ David M. Pernini*
Joseph D. Wargo
Georgia Bar No. 738764
David M. Pernini
Georgia Bar No. 572399
Brandon Parrish
Georgia Bar No. 388223
999 Peachtree Street, NE, Ste 1120
Atlanta, Georgia 30309
Telephone: 404-853-1500

18

Facsimile:  404-853-1536
jwargo@wfslaw.com
dpernini@wfslaw.com
bparrish@wfslaw.com

*Counsel for Defendant Southeast Series of Lockton Companies, LLC*

## <u>RULE 7.1.D CERTIFICATE</u>

The undersigned counsel certifies that this document has been prepared with

Times New Roman 14-point font in accordance with Local Rule 5.1.C.

*/s/ David M. Pernini*
DAVID M. PERNINI

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this day, I electronically filed the foregoing **SOUTHEAST SERIES OF LOCKTON COMPANIES, LLC'S CONSOLIDATED MOTIONS IN LIMINE** with the Clerk of Court using the CM/ECF system, which will automatically send electronic notification to all counsel of record.

Nancy H. Baughan
Jared C. Miller
Matthew M. Weiss
Julie A. Wood
Parker, Hudson, Rainer & Dobbs, LLP
303 Peachtree Street, NE, Suite 3600
Atlanta, Georgia 30308
nbaughan@phrd.com
jmiller@phrd.com
mweiss@phrd.com
jwood@phrd.com

Warren R. Hall
Elizabeth M. Newton
Wayne M. Cartwright
Hall, Gilligan, Roberts & Shanlever, LLP
3340 Peachtree Road – Suite 1900
Atlanta, Georgia 30326
whall@hgrslaw.com
enewton@hgrslaw.com
wcartwright@hgrslaw.com

Respectfully submitted this ___12th___ day, April 2023.

**WARGO,  FRENCH & SINGER LLP**

*/s/ David M. Pernini*
David M. Pernini
Georgia Bar No. 572399