UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JAMESON TAYLOR ANDERSON, ROBERT DEAN ANDERSON, and ROGER MALDONADO, <br><br> Plaintiffs, <br><br> v. <br><br> USI INSURANCE SERVICES LLC, <br><br> Defendant. | <u>CONSOLIDATED CASES PURSUANT TO FED. R. CIV. P. 42</u> <br><br> Civil Action File No. <br><br> 1:19-cv-05582-VMC |
| USI INSURANCE SERVICES LLC, <br><br> Plaintiff, <br><br> v. <br><br> SOUTHEAST SERIES OF LOCKTON COMPANIES, LLC, <br><br> Defendant. | Civil Action File No. <br><br> 1:20-cv-02490-VMC |

**<u>USI INSURANCE SERVICES LLC'S RESPONSES TO SOUTHEAST SERIES OF LOCKTON COMPANIES, LLC'S MOTIONS IN LIMINE (2020 CASE, DOC. 230)</u>**

Pursuant to the Pretrial Order entered in this consolidated action and this Court's Standing Order, USI Insurance Services LLC ("USI") submits the following responses in opposition to the Motions in Limine filed by Southeast Series of Lockton Companies, LLC ("Lockton"). For the reasons stated below, each of Lockton's Motions should be denied.

## **INTRODUCTION**

USI opposes each of the motions in limine (2020 Case, Doc. 230) filed by Southeast Series of Lockton Companies, LLC ("Lockton"). The Court should deny each of Lockton's requests to exclude relevant evidence. Clearly disappointed with this Court's summary judgment rulings in both this action (Civ. Action No. 1:20-cv-02490-VMC) ("2020 Case") (Doc. 174) and in the companion action (Civ. Action No. 1:19-cv-05582-VMC) ("2019 Case") (Doc. 286), Lockton and the Former Employees have filed a litany of meritless requests to exclude evidence. Lockton and the Former Employees essentially seek to exclude evidence of the very conduct for which they are now on trial.

In several instances, Lockton and the Former Employees boldly ask this Court, on the eve of trial, either to disregard or reconsider important aspects of this Court's thorough and well-reasoned summary judgment orders, which were decided more than a year ago, without telling the Court they are asking for reconsideration. These requests are improper because Lockton and the Former Employees never filed a motion to reconsider those rulings and because they have not presented any valid ground for reconsideration.[1] Moreover, as shown by the summary judgment orders,

---

[1] Motions for reconsideration may only be filed upon narrow and limited circumstances, as to where "absolutely necessary to correct a clear error or prevent a manifest injustice." *Cellairis Franchise, Inc. v. Duarte*, No. 2:15–cv–00101–

the evidence at issue is not only admissible, but is in most cases highly critical and essential evidence. USI respectfully asks the Court to deny Lockton's and the Former Employees' requests, which would exclude critical evidence and deprive USI of a fair and complete trial.

1. **Evidence of the Former Employees' and Lockton's whole process and scheme is squarely relevant to USI's remaining claims.**

The Court should deny Lockton's first motion in limine, which improperly seeks to restrict the evidence at trial "to the sole question of solicitation." (2020 Case, Doc. 230 at 4.) Lockton ignores that, in addition to USI's claims for breach of the Former Employees' non-solicitation agreements, the remaining claims as to which liability is still at issue include:

1) USI's claim for attorneys' fees and expenses of litigation under O.C.G.A. § 13-6-11 against the Former Employees (2019 Case, Count VIII);

2) USI's claim for punitive damages against Dean Anderson and Taylor Anderson (2019 Case, Count IX);

3) USI's claim for tortious interference with contractual and business relations against Lockton based on Dean Anderson's and Taylor

---

WCO, 2016 WL 858787, at *1 (N.D. Ga. Mar. 2, 2016) (citing *Pres. Endangered Areas of Cobb's History v. U.S. Army Corps of Eng'rs*, 916 F. Supp. 1556, 1560 (N.D.Ga.1995)). Motions to reconsider may not be used to raise arguments that could have been made before, to introduce new legal theories, or merely to tell the Court how it "could have done better the first time." *Id.* Yet this is exactly what Lockton attempts to do.

Anderson's breaches of their notice provisions and duties of loyalty (2020 Case, Count I);

4) USI's claim for tortious interference with contractual and business relations against Lockton based on Dean Anderson's breaches of his non-compete and based on the Former Employees' breaches of their non-solicitation provisions (2020 Case, Count II);

5) USI's claim for tortious interference with contractual and business relations against Lockton based on the raiding of USI's Aviation Practice Group (2020 Case, Count III);

6) USI's claim for attorneys' fees and expenses of litigation under O.C.G.A. § 13-6-11 against Lockton (2020 Case, Count IV); and

7) USI's claim for punitive damages against Lockton (2020 Case, Count V).

This Court has already determined that "[w]ithout question, there is evidence from which a factfinder could determine *that the __whole process__ was a carefully orchestrated scheme to bring business from USI to Lockton*." 2019 Case, Doc. 286, at 41 (emphasis added). Evidence of the entire process and scheme is no doubt relevant to establish liability on USI's remaining claims as well as damages. Most plainly, USI's tortious inference claims against Lockton are based on more than just facts relating to the Former Employees' improper solicitations of USI Client Accounts. The evidentiary restriction Lockton requests would exclude clearly relevant evidence necessary to prove USI's remaining substantive claims against both Lockton and the Former Employees.

Moreover, there is no question that such evidence is relevant to establish USI's remaining ancillary claims for attorneys' fees and punitive damages. Evidence of the entire scheme—and not just evidence of solicitation—goes to support bad faith and/or stubborn litigiousness under O.C.G.A. § 13-6-11. Such evidence is also plainly relevant to establish willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care that would raise the presumption of conscious indifference to consequences, such as would support USI's punitive damages claims. *See* O.C.G.A. 51-12-5.1(b). Evidence of the entire scheme is also relevant to establish specific intent to harm.[2] *See* O.C.G.A. § 51-12-5.1(f). Lockton's motion improperly attempts to require USI to establish these elements of its attorneys' fees and punitive damages claims based on evidence of solicitation alone.

Further, Lockton contends elsewhere in its motions in limine that a key remaining question related to damages is "why the client[s] moved to Lockton." *See* 2020 Case, Doc. 230 at 6. Evidence of the whole process and scheme and how that scheme worked on the subject client accounts is no doubt relevant to the question

---

[2] A party possesses specific intent to cause harm when that party desires to cause the consequences of its act or believes that the consequences are substantially certain to result from it. Intent is always a question for the jury. It may be shown by direct or circumstantial evidence. *See* Georgia Suggested Pattern Jury Instructions, Civil § 66.711.

that Lockton contends is central to the remaining damages claims. Such evidence includes Dean Anderson's and Taylor Anderson's wrongful competitive conduct during their 60-day notice periods and the facts and circumstances of Dean Anderson's work for clients after they transferred to Lockton. These relevant facts are not limited to the question of improper solicitation.

While the jury will hear that the Former Employees breached certain of their contractual provisions and duties to USI, those statements are certainly not sufficient to allow the jury to determine USI's remaining substantive and ancillary claims, or the damages questions as Lockton itself articulates them. Given the issues remaining to be determined, Lockton identifies no legitimate basis to restrict the evidence at trial to "the sole question of solicitation."

## 2.    Evidence of Dean Anderson's non-compete violations is relevant and admissible.

Evidence of Dean Anderson's violations of his two non-compete restrictions is not only plainly relevant evidence, but is essential evidence. Lockton's motion in limine to try to keep out evidence that directly relates to the non-compete claims to be tried, as well as several other claims, defies logic. Accordingly, the Court should deny Lockton's second motion in limine.

In its summary judgment Order, the Court granted summary judgment in favor of USI and against Dean Anderson on the non-competition restriction and the client

non-competition restriction in Mr. Anderson's contract with USI. *See* 2019 Case, Doc. 286 at 26-34. The Court's summary judgment ruling, however, was *as to liability only* and left unresolved the amount of damages that Mr. Anderson caused to USI by his breaches. *Id.* The Court specifically observed: "USI is entitled to present its evidence to the jury of what damages (such as the loss of client accounts) were proximately caused by Dean Anderson's breach of the Non-Compete Covenant." *Id.* at 31. The evidence of specifically which actions Dean Anderson took in violation of his non-compete covenants is necessary to determine the scope of his breaches and the damages resulting from his breaches.

As outlined at length in prior briefing and this Court's prior Orders, after accepting employment with Lockton, Dean Anderson continued to work in the same capacity as he had worked at USI with many of the same clients that he had worked with at USI. *See* 2019 Case, Doc. 286 at 18-19 (summary judgment Order outlining certain evidence of Dean Anderson's non-compete violations), 29-30 (finding that Mr. Anderson engaged in competitive activity in violation of his non-compete restrictions); 2019 Case, Doc. 237-1 at 9-18 (USI's summary judgment brief outlining Mr. Anderson's non-compete breaches); 2019 Case, Doc. 114 at 4-5 (preliminary injunction Order outlining Mr. Anderson's non-compete breaches).

This Court held that Mr. Anderson, through such conduct, breached his non-compete restrictions as a matter of law. *See* 2019 Case, Doc. 286 at 26-34.

While Dean Anderson's liability has been established as a matter of law, evidence of what Mr. Anderson actually did in violation of his non-competes is relevant to proving USI's damages. Dean Anderson's actions at Lockton are relevant to establish the scope of Mr. Anderson's breaches, including to establish which clients Mr. Anderson worked with in violation of his non-competes and the extent to which Mr. Anderson's breaches were a necessary component of the transfers of USI's clients to Lockton.

In addition, contrary to Lockton's assertion, evidence of Dean Anderson's non-compete breaches, including his work with clients and Lockton's aviation team after he moved to Lockton, are in fact probative of the cause of the damages and the issue of why certain clients moved to Lockton. If a client moved to Lockton to continue to work with Mr. Anderson in violation of his non-competes, the fact that Mr. Anderson did, in fact, continue to work with that client immediately after the transfer is certainly evidence of why the client moved to Lockton. If a client continued to work with Mr. Anderson, that is probative that the client's motivation in moving to Lockton was to continue to work with Mr. Anderson and thus probative of the fact that Mr. Anderson's violation of his non-competes caused the damages.

Because Mr. Anderson's working with a client in violation of his non-compete makes it "more probable" that the client moved to Lockton to continue to work with Mr. Anderson, such evidence easily passes the threshold for relevancy. *See* Fed. R. Evid. 401.

In addition, the evidence of Mr. Anderson's non-compete violations is also relevant to USI's tortious interference claim against Lockton. The issues of both liability and damages are to be tried on this claim. It is self-evident that evidence of Lockton's inducement of Mr. Anderson to breach his non-compete restrictions and specifically what Lockton induced Mr. Anderson to do in violation of his non-competes is relevant to both liability and damages on the tortious interference claim. Moreover, the specific details of Mr. Anderson's blatant, repeated, and intentional violations of his non-compete covenants are also relevant to both USI's O.C.G.A § 13-6-11 claim in both cases and USI's punitive damages claim against Lockton in this case, as Lockton, after having its attorneys review his USI employment agreement, hired Mr. Anderson to hold the same position and work with the exact same clients as he did at USI, notwithstanding that doing so directly and unquestionably violated Mr. Anderson's non-competes.

3.  **The Court should deny Lockton's attempt to exclude comments regarding attorney involvement in the underlying scheme.**

As outlined above, Lockton carefully orchestrated the departures of Taylor Anderson, Dean Anderson and Roger Maldonado from USI. Part of that planning involved the use of Lockton's lawyers and the filing of a preemptive lawsuit the day after those Former Employees resigned. Yet Lockton now takes the extraordinary position that, notwithstanding its strategy to involve lawyers in the review of the Former Employees' agreements while they were still employed at USI and to advise those Former Employees regarding the very covenants that are at the heart of this dispute, USI should not be able to introduce any evidence that Lockton used lawyers to help deploy its scheme. Lockton's attempt to use the attorney-client privilege and common interest privilege as both a sword and a shield should be completely rejected. Leaving aside the dubious nature of a privilege claim over conversations with individuals who were not yet associated with Lockton,[3] Lockton's attempt to

---

[3] "It is axiomatic that corporate communications must have remained confidential in order to be protected by the attorney-client privilege; in other words, the communications must not have been disclosed to anyone outside the corporation or to anyone within the corporation who was not authorized to receive them." *Georgia Cash Am., Inc. v. Strong*, 286 Ga. App. 405, 412, 649 S.E.2d 548, 555 (2007).

prevent USI from even discussing the involvement of Lockton's lawyers is a gross overreach and this motion in limine should be denied.

While USI agrees that it cannot inquire as to the *substance* of truly protected attorney-client privileged communications, the fact that the individual defendants met with lawyers from Lockton to plan their departure is part-and-parcel of USI's claims against Lockton.[4] The fact that meetings with an attorney occurred (as opposed to the substance of those meetings) is in no way privileged.[5] To that end,

---

[4] Lockton's claim that a privilege applies to meetings between a then-employee of USI, employees of Lockton, and corporate counsel for Lockton is dubious at best. Nevertheless, any potential privileges that might have existed over the fact the meeting occurred and the general topics discussed at that meeting have been waived. *See* R. Maldonado Dep. (2020 Case, Doc. 92-1) at 115:21-121:13 (Mr. Maldonado disclosing without objection "as to general topics" the substance of the meeting at issue and stating: "We talked about the opportunity and how the covenants of my contract would play into that."). Similarly, Taylor Anderson freely and frequently offered that he "[t]ook advice of counsel" related to his resignation and contracts with USI. *See, e.g.*, T. Anderson Dep. (2020 Case, Doc. 93-1) at 58:20-59:2 ("Q: And did you believe that you were complying with that provision at the time you submitted the notice of resignation? A. Took advice of counsel."); *id.* at 61:4 ("I took advice from counsel[.]"); *id.* at 62:4-13 ("At the direction of counsel …. At the advice of counsel."). Taylor Anderson went so far as to testify that the reason he could not give 60-days' notice as his contract required was that "I took advice of my counsel." *Id.* at 172:12-25. Surely Lockton does not believe this extremely relevant evidence should be excluded, yet this is the relief it seeks.

[5] *See Goddard v. United States*, 131 F.2d 220, 221 (5th Cir. 1942) (privilege "extend[s] only to the communications made in the attorney-client relationship, not to the fact that such a relationship existed."); *St. Simons Waterfront, LLC v. Hunter, Maclean, Exley & Dunn, P.C.*, 293 Ga. 419, 426 (2013) ("In general, the privilege *attaches only to communications* made in the course of an attorney-client

those facts were the subject of discovery (*see* n.4, *supra*) and have been extensively analyzed and relied upon by the Court as part of the scheme at issue. *See* 2020 Case, Doc. 174 at 15 ("Dean Anderson and Sharma met with Wit Hall, a lawyer referred to by Sharma as 'our lawyer.'"); *id.* at 16 (same for Mr. Maldonado); *id.* at 16 (Lockton made indemnification of the Former Employees subject to their compliance with the advice of Lockton's counsel); *id.* at 17 ("Lockton's counsel regularly met with new hires to 'advise them on their rights and responsibilities pre-resignation, resignation, post-resignation' and so the new hires could 'answer any questions that … counsel would have about their employment contract.'"); *id.* at 18 ("Interaction with Counsel" section of summary judgment Order outlining the numerous meetings between the Former Employees and Lockton's counsel); *id.* at 20 (Dean and Taylor Anderson obtained assistance from Lockton's counsel in preparing their resignation letters).

In denying Lockton's motion for summary judgment as to USI's tortious interference claims, the Court correctly relied on the fact that Lockton provided the Former Employees with counsel as part of the scheme to induce them to violate their

_____

relationship.") (emphasis added; quotation marks and citation omitted); *Tenet Healthcare Corp. v. Louisiana F. Corp.*, 273 Ga. 206, 208 (2000) (evaluating privilege issues and noting that privilege must be narrowly construed); *Smith v. Smith*, 222 Ga. 694, 699, 152 S.E.2d 560, 565 (1966) ("The fact of an attorney's employment is properly admitted in evidence.").

contractual obligations to USI. *See* 2020 Case, Doc. 174 at 42 ("Lockton and its counsel also directed the strategy and provided substantial support to the Former Employees pre-resignation regarding planning their simultaneous departure dates and advice about resignation letters and notices to USI's clients of their departure."). The Court relied on the *Carroll Anesthesia* case, which recognized that the new employer providing the advice of its counsel to induce employees to breach their contractual obligations owed to their prior employer supports a tortious interference claim. *See* 2020 Case, Doc. 174 at 33 (citing *Carroll Anesthesia Assocs., P.C. v. AnestheCare, Inc.*, 234 Ga. App. 646, 507 S.E.2d 829 (1998)). Accordingly, there is no basis to grant this motion in limine.

Further, USI does not intend to ask for an "adverse inference" based on the fact that the meetings occurred, but does intend to ask the jury to infer that Lockton orchestrated this wrongful scheme, and the fact that Lockton involved its lawyers at every step is part of that story. Nevertheless, USI is certainly entitled to introduce evidence that Lockton's lawyers were involved from the outset and helped orchestrate the scheme that involved the common law and contractual breaches of contract. That lawyers were involved in Lockton's tortious interference does not make that fact inadmissible, unfairly prejudicial, or otherwise excludable. It makes

Lockton's conduct appear choreographed – as it was – and USI is entitled to argue as such.

No case cited by Lockton in their motion comes close to providing a legal basis to exclude questions regarding Lockton's lawyers' involvement. For example, *In re Terazosin Hydrochloride Antitrust Litigation* discusses that a negative inference **can be drawn** from the invocation of privilege in bad faith in the patent context. 335 F. Supp. 2d 1336, 1365 (S.D. Fl. 2004). In short, Lockton's assertion that "it is not appropriate for counsel to comment upon or for the jury to be permitted to draw an adverse inference from a party's rightful choice not to introduce privileged documents, testimony, or information at trial" is not supported by the case law it cites. Doc. 230 at 10. Indeed, Lockton fails to cite any law involving a situation like the one here where a company's legal counsel helped a competitor's employees breach their prior employment contracts.

In sum, the fact that Lockton's lawyers met with USI employees should not be excluded. The jury can draw whatever inference from those meetings that it wants. So long as USI does not seek to introduce the substance of privileged

communications between a lawyer and his/her client, there is no need for any limitation with respect to Lockton's third motion in limine.

**4.** **As already decided by this Court, Lockton's provision of legal counsel and indemnification to the Former Employees is evidence of Lockton's wrongful conduct and inducement supporting tortious interference.**

This Court should deny Lockton's fourth motion in limine because it attempts to relitigate an issue that was decided on summary judgment and because applicable Georgia law directly contradicts Lockton's position. Lockton has already argued on summary judgment that "providing legal counsel to the Andersons could not be deemed inherently 'wrongful in itself,'" so as to support a claim for tortious interference. *See* 2020 Case, Doc. 137 at 15. In response, USI cited *Carroll Anesthesia Assocs., P.C. v. AnestheCare, Inc.*, which held that an agreement by a new employer to indemnify a newly recruited employee as to legal challenges concerning the covenants can support a claim for interference with the former employer's valid restrictive covenants with the recruit and encouragement for the recruit to breach those covenants. 234 Ga. App. 646 (1998) (reversing summary judgment and finding jury question as to this issue).

This Court ruled that Lockton's providing the Former Employees with "legal counsel and indemnity with regard to any legal challenges" was evidence of improper conduct under Georgia law to support USI's tortious interference claims

against Lockton. 2020 Case, Doc. 174 at 37. Judge Jones found *Carroll Anesthesia* "***factually similar to the instant case in [five] respects***." *Id.* at 33 (emphasis added). He specifically enumerated that *Carroll Anesthesia* involved a business competitor that "executed indemnity agreements" with employees that owed post-term obligations to their former employer, that the employees breached those covenants "relying on the indemnity agreements and advice of [the competitor's] counsel," and that the competitor provided legal counsel to the employees in the litigation concerning the post-term covenants. *Id.* at 33.

Lockton's fourth motion in limine completely ignores this Court's prior rulings in this case and fails to cite or even attempt to distinguish applicable Georgia law that this Court found ***directly on point***. Most of the smattering of non-Georgia cases Lockton cites are completely off-base, addressing issues of attorney-client privilege, a minor's right to counsel in juvenile court on a traffic violation charge, and a criminal defendant's Sixth Amendment right to counsel.[6] Lockton cites no grounds, moreover, for this Court to follow an unpublished decision of a Superior

---

[6] *See Parker v. Prudential Ins. Co. of Am.*, 900 F.2d 772, 775 (4th Cir. 1990) (stating rationale for attorney-client privilege); *In re Kathy P.*, 25 Cal. 3d 91, 102 (Cal. 1979) (holding that minor was not entitled to be advised of right to retain counsel at her expense in juvenile court proceeding); *U.S. v. Romano*, 849 F.2d 812, 818 (3d Cir. 1988) (denial of opportunity to select counsel of choice violated criminal defendant's Sixth Amendment rights).

Court in Massachusetts pre-dating *Carroll Anesthesia* rather than apply clearly governing Georgia law.[7] This Court should deny Lockton's attempt to exclude evidence of Lockton's provision of counsel and promise to indemnify the Former Employees with respect to challenges to their restrictive covenants because this Court has already correctly deemed such evidence relevant to USI's claims as a matter of Georgia law.

**5.** **Evidence of the Former Employees' improper use of USI's confidential information is relevant to USI's pending claims.**

The Court should deny Lockton's broad-sweeping, non-specific motion to exclude evidence and argument regarding the Former Employees' improper use or misappropriation of USI's confidential information because such evidence and argument is relevant to USI's pending claims. For example, one of the steps in Lockton's carefully orchestrated scheme to steal USI's clients was to direct the Former Employees to email USI's clients immediately before or immediately after submitting their simultaneous notices of resignation to USI. *See* 2020 Case, Doc. 174 at 20; 2020 Case, Doc. 93-1 at 179:4-179:21 (Taylor Anderson testifying he discussed sending the unauthorized departure email with his counsel provided by Lockton); 2020 Case, Doc. 92-1 at 173:4-179:13 (same for Roger Maldonado).

---

[7] *See Hanna Paper Recycling, Inc. v. ZBR Pub'ns., Inc.*, 1 Mass. L. Rptr. 587, 1994 WL 879724 (Mass. Super. Ct. Feb. 3, 1994).

Those emails were prepared using USI's confidential customer information. *See* 2020 Case, Doc. 93-1 at 177:3-178:12 (Tayor Anderson testifying he prepared the unauthorized departure email using his USI contacts); 2020 Case, Doc. 92-1 at 171:21–172:13 (Roger Maldonado testifying he prepared the unauthorized departure email using his contact list on his USI work computer). The evidence that the Former Employees used their USI contact lists is relevant evidence in furtherance of the tortious interference claims pending against Lockton. *See Disaster Servs., Inc. v. ERC P'ship*, 228 Ga. App. 739, 741 (1997) (improper actions supporting tortious interference "means wrongful action that 'generally involve[s] predatory tactics such as physical violence, fraud or misrepresentation, defamation, ***use of confidential information***, abusive civil suits, and unwarranted criminal prosecutions.'") (quoting *Am. Bldgs. Co. v. Pascoe Bldg. Sys.*, 260 Ga. 346 (1990)) (emphasis added). This and other similar evidence is relevant and admissible at trial.

The Court should deny Lockton's attempt to categorically exclude unspecified evidence of the Former Employees' improper use and misappropriation of USI's confidential information. The Court can decide evidentiary objections as necessary when and if evidence is offered at trial. To the extent Lockton has objections to the

designations of portions of Rikin Patel's deposition, it can assert such objections through the procedures outlined by the Court.

**6.     The Court should deny Lockton's sixth motion in limine requesting the exclusion of testimony Ms. Moore and Mr. Hanig.**

The Court should deny Lockton's motion to exclude the testimony of Tracy Moore and Paul Hanig both of whom were known and the subject of discovery inquiries. Regarding Tracy Moore, Lockton incorrectly argues that she was not disclosed in USI's discovery responses. Ms. Moore, the Regional Chief Financial Officer for USI, was identified in and verified USI's responses to Defendant Southeast Series of Lockton Companies, LLC's Supplemental Interrogatories on September 8, 2022. (A copy is attached hereto as Exhibit A.) Ms. Moore also was identified in Lorna Gunnersen's expert report submitted on behalf of USI in November 2020 as the person who provided the revenue information on which Ms. Gunnersen's calculations were performed. *See* Lorna Gunnersen report dated November 2, 2020 (2019 Case, Doc. 256-3) at ECF p. 16. Further, Ms. Gunnersen testified in her deposition on February 3, 2021 that she relied on revenue information provided by Ms. Moore in preparing her report. *See* February 3, 2021 Deposition of Lorna Gunnersen (2019 Case, Doc. 256-2) at ECF pp. 5, 6, 7.) In fact, Ms. Moore was referenced *eight times* in Ms. Gunnersen's deposition. Thus, Ms. Moore was disclosed in discovery responses, was known to Lockton's counsel, and was the

subject of inquiry during discovery. There is no surprise to Lockton or basis to exclude her testimony.

Paul Hanig is the subject of six discovery requests opposing counsel served on USI in May 2020. *See* Plaintiffs' Second Requests for Production of Documents, dated May 8, 2020, Requests 29-35. (A copy is attached hereto as Exhibit B.) Opposing counsel also asked questions about Mr. Hanig and emails to/from him in the depositions opposing counsel took of Beverly Fant and Rob Meyers. *See* November 11, 2020 Deposition of Beverly Fant (2019 Case, Doc 244) at 80, 91-92; December 2, 2020 Deposition of Rob Meyers (2020 Case, Doc. 113) at 28, 37-40, 42-50; Exs. 13, 19, 20, 21, 22, 31.) Possible testimony from Mr. Hanig at trial is no surprise. Lockton took discovery relating Mr. Hanig and it was not prevented from deposing Mr. Hanig or Ms. Moore should they have chosen to do so.

Respectfully submitted this 19th day of April, 2023.

**PARKER, HUDSON, RAER & DOBBS LLP**

/s/ Jared C. Miller
Nancy H. Baughan
Georgia Bar No. 042575
Jared C. Miller
Georgia Bar No. 142219
Julie A. Wood
Georgia Bar No. 023749
Anne Horn Baroody

Georgia Bar No. 475569
303 Peachtree Street, N.E., Suite 3600
Atlanta, Georgia 30308
Telephone:   404-523-5300
Facsimile:   404-522-8409
E-mail: nbaughan@phrd.com
        jmiller@phrd.com
        jwood@phrd.com
        abaroody@phrd.com

*Attorneys for USI Insurance Services LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

In compliance with N.D. Ga. LR 7.1(D) and 5.1(C)-(D), this opposition brief has been prepared with a top margin of not less than one and one-half (1 ½) inches and a left margin of not less than one (1) inch. This Opposition has been prepared in Times New Roman 14-point font type and is within the 25-page limit as set forth in the local rule.

This 19th day of April, 2023.

PARKER, HUDSON, RAINER & DOBBS LLP

<u>/s/ Jared C. Miller</u>
Jared C. Miller

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served a copy of the within and foregoing **USI INSURANCE SERVICES LLC'S RESPONSES TO SOUTHEAST SERIES OF LOCKTON COMPANIES, LLC'S MOTIONS IN LIMINE (2020 CASE, DOC. 230)** upon all parties to this matter by electronically filing a copy of same with the Court's CM/ECF system, which will automatically send an electronic copy to the following counsel of record:

**Hall, Gilligan, Roberts & Shanlever, LLP**

Warren R. Hall, Esq.
Elizabeth M. Newton, Esq.
Wayne M. Cartwright, Esq.
3340 Peachtree Road – Suite 1900
Atlanta, Georgia 30326
whall@hgrslaw.com
enewton@hgrslaw.com
wcartwright@hgrslaw.com

**Wargo & French LLP**

Joseph D. Wargo, Esq.
David M. Pernini, Esq.
Brandon Parrish, Esq.
999 Peachtree Street, NE, 26th Floor
Atlanta, Georgia 30309
jwargo@wargofrench.com
dpernini@wargofrench.com
bparrish@wfslaw.com

**Crowell & Moring LLP**

Christopher J. Banks, Esq.
3 Embarcadero Center
26th Floor
San Francisco, CA 94111
cbanks@crowell.com

Astor H. L. Heaven, III, Esq.
1001 Pennsylvania Ave., N.W.
Floor 10
Washington, DC 20004
aheaven@crowell.com

Sigourney R. Haylock, Esq.
40th Floor
515 South Flower Street
Los Angeles, CA 90071
shaylock@crowell.com

This 19th day of April, 2023.

/s/ Jared C. Miller
Jared C. Miller

23